## THE STATE ex rel. YOUNG v. OLIVER et al.

### In Banc, June 18, 1901.

1. **Elections:** CONTEST: APPEARANCE: DEFECT IN SERVICE: WAIVER. Where the contestee in an election contest appeared before the clerk of the circuit court, and filed a motion requiring the contestor to give security for costs, and moved that the notice of contest be made more definite, such appearance cured any defects in the service on him.

2. ————: ————: EXAMINATION OF BALLOTS: COMPARISON WITH VOTING LISTS. Constitution, article 8, section 3, declares that in all cases of contested elections the ballots may be counted and examined under such regulations as may be prescribed by law. Revised Statutes, section 7046, relative to the contest of any election in a county, provides that, on a day fixed, the county clerk shall, in the presence of the contesting parties, and their attorneys, open the ballots. Section 7047 provides the contesting parties may examine the ballots, and that the county clerk shall make return to the court in which the contest is pending of all facts which either party may desire which appear from the ballots. *Held*, that on an examination in an election contest the parties have a right to examine the ballots only, and not to compare them with the voting lists.

State ex rel. v. Oliver.

3. ————: ————: ————: TAKING NOTES. On an examination of the ballots, the parties have no right to make notes.

4. **Practice:** JURISDICTION: PROHIBITION. Where want or excess of jurisdiction appears on the face of the record, no necessity exists to suggest such fact to the trial court before seeking prohibition from a higher tribunal.

## *Prohibition.*

RULE MADE ABSOLUTE.

RETURN OF CIRCUIT JUDGE.

The return of the circuit judge to the provisional writ of prohibition in this case is as follows:

"In the Supreme Court of Missouri. Court in Banc. April Term, 1901.

"James K. Young,
   v.
William G. Oliver, Hon. Gallatin Craig,
   T. S. Cordill and William Kelley.

"On Application for Writ of Prohibition.

"Whereas, a provisional writ of prohibition has heretofore been issued in the above entitled cause by HON. JAMES B. GANTT, one of the judges of the Supreme Court of the State of Missouri, in which writ the following order was made: 'We do therefore prohibit you, the said Gallatin Craig, judge of the Nodaway Circuit Court, firmly enjoining you that you do not further proceed in the premises in the said election contest case nor further proceed in the premises in any way touching the premises, whereof the said James K. Young complains

the said William G. Oliver hath drawn him before you, nor that you attempt anything that may tend to the damage of the said James K. Young or to the prejudice of the State of Missouri or in derogation of the laws thereof until the further order of the Supreme Court of this State,' and

"Whereas, the further order was made in said writ, commanding the said Gallatin Craig to appear before the Supreme Court of the State of Missouri 'to be held at Jefferson City on the twenty-first day of May, 1901, then and there to show cause, if any you have, why you should not be absolutely prohibited to hold cognizance of and to prosecute the suit aforesaid.'

"Now, therefore, comes Gallatin Craig, judge of the Nodaway Circuit Court, in obedience to said writ and command, and says that such writ should not be made permanent for the reasons:

"First.  The papers, as shown by the certified transcript of the record in said cause, show that the undersigned judge of the Nodaway Circuit Court has full jurisdiction and cognizance of said election contest.

"Second.  Insufficiency of notice of contest can not be raised by writ of prohibition.  'As to insufficiency of notice of contest..........the writ of prohibition goes only to restrain the assumed exercise of jurisdiction where none exists, and not to its erroneous or irregular exercise.  It can not issue where other adequate remedies exist, nor be made to perform or usurp the functions of an appeal.'

"Third.  Plaintiff in his application (contestee in contest case) appeared in the contest proceeding in the circuit court by filing a motion to require contestant to make his notice more specific and also by motion to require contestant to give security for costs.

"Fourth.  The plaintiff in this application made no objections nor took exceptions to any order or proceeding made

or taken by the judge of the circuit court in the contest cause.

"Fifth.   Plaintiff in this application has in no way raised or questioned the jurisdiction of the circuit court to hear and determine the questions involved in said contest.   It is true that he filed his motion to quash the sheriff's return of service, but, before filing this motion, he had filed a motion in the circuit court to require the contestant to make his notice of contest more specific and, on the court's overruling said motion to quash, no objection was made or exception saved to said order.

"Sixth.   Plaintiff is mistaken in his application for this writ in stating that he had applied to the judge of the circuit court for temporary injunction restraining contestant Oliver and his attorneys from comparing the ballots with the list of voters, as shown on the poll-books, etc.   No such application was ever made.   The application referred to was an application for injunction to restrain the county clerk from certain acts regarding the counting, comparison, etc., of ballots, and he was the sole defendant.   The contestant Oliver was not a party to said injunction proceeding when said order of temporary injunction was made, but afterwards, on his motion, was made a party defendant; but the question of his rights was never presented in said application for injunction.   Said injunction was dissolved for the reason that the court was of the opinion that the matters involved in said application were not proper matters to be controlled by injunction.   In this connection, it is probably proper to call the attention of the court to the fact that the order that plaintiff in his application herein says was made in the premises, directing the manner of procedure, was not made in the injunction proceeding, but was made in the contest case on application of contestant to strike out the county clerk's return and for order to proceed to count the ballots; said order referred to was made for the purpose of re-

quiring contestant and his attorneys to make no further examination of the ballots than was necessary for the issues in the cause and to prevent them from examining such ballots, only so far as the office being contested was involved. At the time of making the order, the record discloses that neither an objection nor an exception was made or saved thereto.

"Seventh. If it is intended by the provisional writ herein granted to prohibit the court from exercising jurisdiction in making orders in the premises rather than to prohibit the consideration of the cause at all, it is respectfully submitted that all orders made in the premises by the judge of the circuit court are warranted by the universal practice in such causes, both in the circuit and appellate courts of this State. This honorable court has so far recognized the practice that has substantially been followed in this case that it has, by strong reasoning, carried the right to open the ballots, etc., to officers to whom the right or duty had not been expressly granted. And, again, it has declared that 'the count, examination and comparison is really made by the parties to the contest and their attorneys.' The judge of the circuit court of Nodaway county, in making all orders made in this cause, did so recognizing the interpretation placed on the Constitution and legislation in pursuance thereof by the Supreme Court of this State as the controlling law of the land on the subject of election contests. Should this honorable court now conclude that the numerous cases that have been disposed of, involving the construction of the election laws, have been wrongfully and unlawfully conducted and that a new construction should be given to the constitutional provision and legislative enactments relating to election contests, then the judge of the circuit court of Nodaway county would cheerfully and willingly follow such construction. But it is respectfully submitted that, before the extraordinary writ of prohibition should be exercised to prevent the circuit judges of the State from fol-

lowing and recognizing the decisions of the highest courts of the State as their guide in the determination of causes of which they have jurisdiction, the Supreme Court should be very careful in ascertaining that the refusal of said writ would inflict upon the person applying for the same an injury which could not be redressed in any other way. Especially is this true in a case where no objection is made or exception saved to the exercise of jurisdiction, either as to the subject-matter in issue or as to the assumption of jurisdiction of some matter arising in the cause, but not involving original jurisdiction.

"Having complied with the commands of said provisional writ, it is immaterial to the undersigned, as judge of said Nodaway Circuit Court, what orders may be made by your honorable body in the premises.

"Respectfully submitted,

"GALLATIN CRAIG,
"Judge of the Nodaway Circuit Court."

*J. W. Thompson* and *John M. Dawson* for relator.

This being a proceeding *"in rem"* the statutory requirement as to the manner in which notice shall be given is necessary to the jurisdiction over the subject-matter and it can not be waived by appearance. Taylor v. Todd, 48 Mo. App. 553; Railroad v. Young, 96 Mo. 42; Worden v. Railroad, 78 Mo. App. 667; Huffman v. Sisk, 62 Mo. App. 402; Brown v. Woody, 64 Mo. 550. Service of counter notice of contest not a waiver. Castello v. St. Louis Circuit Court, 28 Mo. 265. Where want of jurisdiction appears on the face of the record, it is not necessary to first apply to the court of the record to stop action before asking a prohibition from a higher court on account of such want of jurisdiction. State ex rel. v. Hirzel, 137 Mo. 435. It is no bar to a writ of prohibition that the

objection of want of jurisdiction was not made in the trial court where the order complained of was made in vacation, ex parte, and the defect of the jurisdiction appears on the face of the record. Railroad v. Wear, 135 Mo. 230. Writ may be granted on the application of a stranger to the record. Barnes v. Gottschalk, 3 Mo. App. 111. Under the proceedings in this case the secrecy of the ballot is violated, and that which the voter himself can not be compelled to disclose is laid bare at the mere whim and caprice of the contestant. If the county clerk, at the dictation of contestant, shall certify up to the circuit court how this man and that man voted, does it not accomplish the very end the Constitution seeks to prevent? Cooley's Const. Law, 604; People v. Cicott, 16 Mich. 283; People v. Pease, 27 N. Y. 81; Williams v. Stein, 10 Amer. Rep. 100; Windes v. Nelson, 60 S. W. 135. If the order of the circuit court is permitted to be enforced, the secrecy of the ballot will be violated and the injury thus done can not be remedied by appeal, for the mischief will have been consummated, and the disclosure made to the world through the certificate of the county clerk of how the individual voters exercised the election franchise.

*G. B. Roseberry* and *P. L. Growney* for respondents.

SHERWOOD, J.—This is an election contest over the office of county surveyor of Nodaway county. The return of respondent county clerk Cordill, made to the respondent circuit clerk Kelley, shows the existence of a peculiar state of facts. Kelley, upon petition presented, had, on January 8, 1901, made an order on the county clerk, the concluding portion of which is the following: "Therefore, you are hereby commanded to open, count and compare with the list of voters and examine the ballots in your office which were cast at the elec-

tion, in contest and to certify the result of such count, comparison and examination so far as the same relates to the office in contest to this court, all as provided by sections 7045, 7046 and 7047, Revised Statutes 1899."

In his first return made to the circuit clerk Kelley, county clerk Cordill, after stating that the ballots of a number of townships had been counted, concludes by saying: "After the opening and counting of the eight foregoing townships as aforesaid, in nearly all of which the contestor and his attorneys did make a record of the political character of each and every ballot, its number, the name of the voter voting the same and whether he voted for contestor or contestee or neither, then the count was discontinued for the reason that said contestor would not comply with the order of injunction, but insisted that they had the right and would take the numbers of the ballots and all notes desired regarding the same. The county clerk has been ready at all times to count said ballots and give both contestor and contestee due notice of the same, but said contestor demanded to be present and stated that he would not desist from taking the numbers of ballots and a record of all information desired relative to said ballots, and as said contestor has in his possession a copy of the pollbooks of Nodaway county, said record might make public the political character of the names of the voters of Nodaway county.

"The county clerk, wishing to obey the injunction issued by the circuit judge of Nodaway Circuit Court on the fourth day of February, 1901, has not counted the remainder of said ballots for the reason that contestor insists that, on the counting of the same, he and his attorneys will make a record of all information which they desire that may be obtained from opening said ballots.

"All of which is respectfully submitted.

"Tunis S. Cordill,
"Clerk of the Nodaway County Court."

Upon the coming in of this return it appears that upon motion of Wm. G. Oliver, respondent herein, the circuit court on March 2, 1901, made an order on Cordill, county clerk, as follows: "Directed by the court, that the county clerk with the count from day to day until completed and make his return to this court."

It will be noted that this order bears no date, and, it would seem, lacks the word *"proceed."* The date seems to be supplied by the following return made thereto:

"Maryville, Mo., March 11, 1901.

"In obedience to an order of the circuit court, issued March 2, 1901, commanding the county clerk to proceed with the count of the ballots in the Oliver v. Young contest, the county clerk, after giving contestor and contestee due notice, proceeded to count said ballots on the morning of March 6, but counsel for contestor would not desist from making a record of the number of each ballot, the name of the voter voting the same, and whether cast for contestor or contestee. The county clerk, wishing to comply with an injunction previously issued, did not complete the count of said ballots.

"(Seal)   Witness my hand and seal this eleventh day of March, 1901.

"TUNIS S. CORDILL, County Clerk."

Between the time of the first return, which, as before stated, was made by county clerk Cordill to circuit clerk Kelley, an amended notice of contest had been made and filed by Wm. G. Oliver stating many new grounds of contest.

The county clerk being again ordered by the circuit court to proceed with the count, made the following return thereto:

"Maryville, Mo., April 3, 1901.
"To the Honorable Gallatin Craig,
      "Judge Circuit Court,
            "Maryville, Mo.
"Dear Sir:

"I have the honor to submit the following in regard to my further proceedings in the contest case of W. G. Oliver v. Jas. K. Young, viz:

"I gave due notice to contestor and contestee that I would again take up and proceed with the counting of the ballots March 20, 1901. On said day, contestor and contestee and their respective attorneys met for the purpose indicated. Contestor W. G. Oliver and his attorneys still insisted on making notes on their book containing the names of the voters who cast ballots at the last general election, stating that they would not obey, but ignore the injunction given them by you. Whereupon, I refused to take up the count because I will not disobey the restraining order received from you.

(Seal)   "Witness my hand and seal this third day of April, 1901.

"TUNIS S. CORDILL, Clerk of the County Court."

The above excerpts are taken from the return of Wm. G. Oliver, and made part of his return, as being part of the record in the election contest cause.

Upon the coming in of this last return, the following final order was made by the circuit court in the premises, as appears in relator's petition, referred to in the return of Oliver, and not denied in the returns of either of the respondents:

"State of Missouri,
"County of Nodaway.

"February Adjourned Term, A. D. 1901.

"In the circuit court of said county, on the eleventh day of April, 1901, the following among other proceedings, were had, viz.:

"William G. Oliver,

v.

"James K. Young.

"Motion for cost bond confessed. Plaintiff required to file cost bond within ten days after date, to be approved by the circuit clerk.

"Come now the parties in the above-entitled cause, on motion of plaintiff to strike out the county clerk's return and for peremptory order to proceed to count ballots, and the court, having heard the evidence on said motion introduced by the respective parties, directs the county clerk to proceed with the counting of the ballots and the matters involved in the contest and that the contestor be permitted to compare the ballots with the list of voters, and to certify such facts as either party may desire. certified, relating to the office for which contest is being made. .

"It appearing to the court that the contestor and the county clerk have been unable to agree upon a method of procedure, the court directs that the contestor and contestee be permitted to make such notes relative to the voters voting for the office of county surveyor as either party may desire; said votes only to relate to the office of county surveyor.

"It is further ordered that the county clerk be authorized to prohibit the making of notes and the carrying of the same from said county clerk's office as to what political party any voter, voting at said election, voted for.

"It is further ordered that the county clerk be further

Vol 163 mo—44

authorized to not allow notes to be taken and carried out of the office relative to any elector's vote, to whose vote no objection is made by either party.

"It is further ordered that the clerk shall proceed to count said ballots from the last counting prior to the time of the issuance of an injunction in this cause, and at the completion of said count, that he shall certify all facts in connection with said contest as provided in article 1, chapter 102, Revised Statutes of 1899; and that said return of the county clerk shall be made at the next term of this court."

On petition presented by James K. Young, relator in this cause, setting forth, among other things, the making of the order last recited, Mr. Justice JAMES BRITTON GANTT, granted a rule *nisi* in prohibition against each of respondents in the above-entitled cause, making such rule returnable on the twenty-first day of May, 1901. The return of the respondent judge, Gallatin Craig, will accompany this opinion; it offers, however, to the pleaded order, no plea of *nul tiel record,* and besides that, refers to that order; so that the fact of the order being made and made as such, stands conceded.

Upon this order hinges the proper disposition of this cause, because it is thought that James K. Young's appearance as contestee before the clerk of the circuit court, and filing a motion to require his opponent to give security for costs and also his motion to make Oliver's notice of contest more definite and certain, were such appearances as cured a defective service if there were any. [Lemon v. Board, 108 Mo. 235.] Besides that, Young appeared before the county clerk and filed a counter notice of contest.

Recurring, then, to the sufficiency and propriety of the order in question; was the order such an one as the law will sanction? The appropriate answer to be made to the question propounded is to be deduced from the Constitution of this

State as well as certain statutory provisions relating thereto. Section 3 of article 8, of our Constitution provides: "All elections by the people shall be by ballot; every ballot voted shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters, opposite the name of the voter who presents the ballot. The election officers shall be sworn or affirmed not to disclose how any voter shall have voted, unless required to do so as witnesses in a judicial proceeding: Provided, that in all cases of contested elections the ballots cast may be counted, compared with the list of voters, and examined under such safeguards and regulations as may be prescribed by law."

To put into effect this constitutional provision, the Legislature enacted certain statutory sections which were enacted with the evident purpose in view of designating "such safeguards and regulations" for opening and examining the ballots, as the Constitution had provided, might "be prescribed by law."

Those sections are as follows:

"Sec. 7044. Either house of the General Assembly, or both houses in joint session, or any court before which any contested election may be pending, or the clerk of any such court in vacation, may issue a writ to the clerk of the county court of the county in which the contested election was held, commanding him to open, count, compare with the list of voters and examine the ballots in his office, which were cast at the election in contest, and to certify the result of such count, comparison and examination, so far as the same relates to the office in contest, to the body or court from which the writ is issued.

"Sec. 7045. Such writ shall be served, without delay, on such county clerk by the sheriff of his county, and on receipt of such writ such clerk shall at once fix a day, not more than thirty days after the date of the receipt of the writ, on

which he will proceed to open such ballots, and shall cause notice, in writing, of the day so fixed to be served on the contestor and contestee or their attorneys, at least five days before such day. Such notice shall be served in the same manner as a writ of summons in a civil action; but in case either of the parties and his attorneys are not found in the county of such clerk, such notice shall be served by posting the same on the door of the county clerk's office.

"Sec. 7046. On the day so fixed the clerk shall proceed, in his office, to open such ballots, in the presence of the contestor and contestee and their attorneys, or such of them as demand to be present, and after swearing them not to disclose any fact discovered from such ballots, except such as may be contained in the clerk's certificate. While such ballots are open and being examined, the clerk shall exclude all other persons from his office.

"Sec. 7047. The clerk shall permit the contestor and contestee and their attorneys to fully examine the ballots, and shall make return to the writ, under his hand and official seal, of all the facts which either of said parties may desire, which may appear from the ballots, affecting or relating to the election for the office in contest.

"Sec. 7048. After the examination of the ballots is completed, the clerk shall again securely seal them up as they were, and preserve and destroy them as provided by law, in the same manner as if they had not been opened.

"Sec. 7049. The certificate of the clerk, made under the provisions of this article, shall be prima facie evidence of the facts stated therein; but the persons present at the examination of the ballots may be heard as witnesses to contradict the certificates." [R. S. 1899.]

These sections, together with section 7114, Revised Statutes 1899, prohibiting any election officer from disclosing for

whom any voter votes, and section 7254, Ib. which requires the ballots to be securely locked up, etc., etc., constitute the sum total of the regulations and safeguards which legislation has prescribed.

These legislative prescriptions and regulations are in their very nature exclusive and this .is so on a very familiar principle. If the sections quoted *do not in their terms permit* the doing of any act when ballots are to be opened and counted, then such act *may not be done.* No exceptions outside of those specially mentioned by the statute can have any legal existence. This point finds apt illustration in the recent case of State ex rel. Funkhouser v. Spencer, 164 Mo. 23. In that case the circuit court had made an order on the election commissioners of the city of St. Louis for the opening and counting of the ballots, and among the provisions and requirements of such order were the following:

"You are further commanded in such count, examination and comparison of the ballots aforesaid, that you shall permit the said contestant, Henry Lloyd, and the said contestee, Robert M. Funkhouser to be present during all of your proceedings, either together with their respective attorneys of record in this cause—not more than two for each party—or separately, and shall also permit the said attorneys for the contestant and contestee separately to be present during all the said proceedings, *and shall permit them and each of them, as they may request to fully examine said ballots and voting lists, and to compare the same, and in the return or certificate which you shall file stating your proceedings under this writ, you shall also return to this court under your hands and official seal all the facts which either of the parties to the aforesaid election contest may desire and request to have returned, and which may appear from the said ballots and the examination and comparison thereof,* affecting or relating to the election for

the office now being contested in this proceeding."

In that case, MARSHALL, J., in delivering the opinion of the court, after quoting the foregoing constitutional and statutory provisions, said: "Thus it will be seen that while section 7044 authorizes the court before which any contested election may be pending to order the clerk of the county court (in St. Louis the board of election commissioners) 'to open, count, compare with the list of voters and examine the ballots in his office' and to certify the result of such count, comparison and examination to the court, it gives no such right to any one except the clerk—not even to the parties or their attorneys. The subsequent sections emphasize this feature and show that it is not simply a *casus omissus* but that it was deliberately and intentionally so framed. Thus, section 7046 provides that the ballots shall be opened in the presence of the parties and their attorneys, 'and after swearing them not to disclose any fact discovered from such *ballots* except such as may be contained in the clerk's certificate.' It will here be noted that the oath of secrecy relates only to what may be discovered from the ballots, and does not impose any secrecy as to what is shown by a comparison of the ballots with the voting lists.

"But this is not all. Section 7047 requires the clerk to permit the contestor and the contestee and their attorneys '*to fully examine the ballots*' and further that the clerk, 'shall make return to the writ .... of all the facts which either of said parties may desire, *which may appear* from the ballots affecting or relating to the election for the office in contest.'

"So that up to this time the Legislature has only given the parties or their attorneys the right to fully examine the *ballots* and to require the clerk to certify all the facts which either of the parties may desire *which appear from the ballots*. No right has been given them to compare the ballots with the

voting lists. Such a comparison would disclose how the elector voted, and thereby lift the veil of secrecy without his consent to the parties and their attorneys, and they would be under no obligation not to disclose the information so obtained, for their oath of secrecy is limited by the statute 'not to disclose any fact discovered from such ballots'—not from such a comparison. And if the contention of respondents that the term 'ballot' employed in section 7046 includes such a comparison of the ballots with the voting lists, be true, then it necessarily follows that the veil of secrecy would be lifted not only to the eyes of the parties and their attorneys, but also to the whole world, for section 7047 requires the clerk to permit the parties and their attorneys to fully examine the ballots, and to make return 'of all the facts which either of said parties may desire which may appear from the ballots.' So that under such a construction the clerk could be required by the parties to certify to the circuit court and thus make a public record of every fact that appears from the ballots and from a comparison of the ballots with the voting lists, and in this manner a perpetual public record would be made of how every elector voted. And this is precisely what the circuit court ordered to be done in this case. That this is not the true or literal meaning of the law is conclusively shown by the fact that the parties and their attorneys are required to be sworn not to disclose any fact discovered from the ballots. If ballots includes voting lists, then what useful purpose would be subserved by swearing the parties to secrecy when all the facts so discovered would be made matters of public record in the circuit court by the return of the clerk? And yet the prime purpose of voting by ballot is to preserve inviolate the secrecy of the vote."

These views, thus expressed, necessarily condemn paragraphs 1 and 2 of the order made in this instance.

Nor is there any provision made or permission given in

the sections of the statute quoted, for any of the parties or their attorneys to make notes; and in doing this they could easily go further. If they are allowed to make notes, it is easy to see that no one could prevent them from stating therein "as to what political party any voter voting at such election voted for." And it is also easy to see that they, having made notes containing such prohibited facts, the clerk would have no authority to supervise them; look over their shoulders, and see that they did not have and did not take such contraband matter out of his office.

The only rights the contestor or contestee or their attorneys can assert under the law, are those granted them under sections 7046 and 7047, which include the right named in the latter section, that of having "the clerk to make return to the writ, under his hand and official seal, of all the facts which either of said parties may desire, *which may appear from the ballots,* affecting or relating to the election for the office in contest." All things else are tabooed. When the clerk has done his office as in these two sections provided, the chapter is closed and the function ended.

In conclusion, prohibition may go because of lack of jurisdiction, and equally because of excess of jurisdiction. And where want of or excess of jurisdiction appear on the face of the record, no necessity exists to make suggestion to the trial court before seeking prohibitory relief from a higher tribunal. [State ex rel. v. Hirzel, 137 Mo. 435.]

Upon these considerations, the rule will be made absolute, as to paragraphs 1 and 2 of the order being commented on, and as to the parties or their attorneys making any notes whatever during the progress of opening and counting the ballots. All concur.