STATE OF MISSOURI ex rel. IONE PENROSE, Relator, v. WILLIAM H. KILLOREN, Judge of the Circuit Court of the City of St. Louis, and JESSE W. BARRETT, WILLIAM J. BLESSE, A. SYDNEY JOHNSTON and ALPHONSE G. EBERLE, Members of the Board of Election Commissioners for the City of St. Louis, Missouri.—No. 39371.—188 S. W. (2d) 1.

Court en Banc, June 8, 1945.

*Harry N. Soffer* and *Joseph Nessenfeld* for relator.

24

*Tom R. R. Ely* and *George L. Stemmler,* City Counselor, for respondents.

TIPTON, J.—This is an original proceeding in prohibition to prohibit respondents from further exercise of jurisdiction of a purported election contest involving the office of Republican Committeewoman for the Eighteenth Ward of the City of St. Louis, Missouri, wherein Naomi Hughes Oldham is contestant and the relator is contestee.

At the primary election held on August 1, 1944, an election was held for the office of Republican Committeewoman for the Eighteenth Ward of the City of St. Louis. There were three candidates for that office. Their names and the votes received by each were Ione Penrose,

1,501 votes, Naomi Hughes Oldham, 1,023 votes, and Sarah H. Oldham, 396 votes. Ione Penrose was declared elected to the office, a certificate of election was duly issued to her, and she duly qualified as Republican Committeewoman of that ward.

On August 23, 1944, Naomi Hughes Oldham caused to be delivered to relator an instrument entitled: "Notice of Election Contest for the Office of Republican Committeewoman of the Eighteenth Ward of the City of St. Louis, Missouri." This paper was entitled in the Circuit Court of the City of St. Louis, Missouri, was addressed to Mrs. Ione Penrose, Contestee, and stated as follows:

"I, Mrs. Naomi Hughes Oldham, hereinafter referred to as Contestant, do hereby notify you, Mrs. Ione Penrose, hereinafter referred to as Contestee, of my intention to contest your election to the office of Republican Committeewoman of the Eighteenth Ward of the City of St. Louis, Missouri, which you now hold, and that said contest will be filed in the Circuit Court of the City of St. Louis, Missouri, and you are hereby notified of the facts hereinafter set out, upon which I intend to rely for grounds of said contest."

The notice stated various grounds for the election contest, which will later be discussed ▆ in this opinion. The notice then stated that "the undersigned, Naomi Hughes Oldham, *will in due time* make application to the Circuit Court of the City of St. Louis, Missouri, for the issuance of a writ directed to the Board of Election Commissioners of said City commanding said Board . . ." (Italics ours.)

▆ The relator first contends that the service of the notice of contest was insufficient to confer jurisdiction upon the circuit court over the election contest or over the person of the relator.

Section 11632, R. S. Mo. 1939, provides ". . . no election . . . shall be contested unless notice of such contest be given to the opposite party within twenty days after the votes shall have been officially counted; the notice shall specify the grounds upon which the contestant intends to rely, . . . and the notice shall be served fifteen days before the term of court at which the election shall be contested, . . ."

It is the relator's contention that the contestant wholly failed to give any notice to her of the term of court at which the election would be contested, and, therefore, the circuit court was without jurisdiction to try the cause. The notice did not state the term at which the contest would be filed, but did state it would be filed "in due time."

Election contests are purely statutory, and the notice of an election contest as provided in Section 11632, supra, serves a double purpose. The notice of contest takes the place of a petition in an ordinary suit and the service of the notice upon the contestee fills the office of a summons in an ordinary suit. State ex rel. Wells v. Hough, 193 Mo. 615, 91 S. W. 905; Hale v. Stimson, 198 Mo. 134, 95 S. W. 885; State ex rel. Brown v. Stewart, 313 Mo. 1, 281 S. W. 768.

It is to be noted that the above statute requires that the notice of contest shall be served fifteen days before the term of the court at which the election shall be contested. The relator's position is that the contestee must be notified of the term of court at which her election shall be contested, in order that she may be apprised of the time at which she is called upon to appear and defend herself in the circuit court; otherwise, she is denied due process of law.

The notice in the instant case said "in due time" but failed to state the term of court at which the same would be filed. That part of the notice filled the office of a summons, and, if defective, it failed to give the circuit court jurisdiction over the person of the relator. There is no contention by the relator that some of the grounds stated in the notice were not sufficient to sustain an order of the court for a recount. Therefore, the question before us on this point is, did the court have jurisdiction over the person of the relator? Respondents contend that the relator entered her appearance, and, therefore, the circuit court had jurisdiction of the person of relator. If so, it is not necessary to decide if the phrase "in due time" is a substantial compliance with the statute.

On several occasions, we have held that in election contest cases, if the contestee enters his or her appearance, it waived a defective notice, if the defect in the notice went to that part of it that brought the contestee into court. State ex rel. Young v. Oliver et al., 163 Mo. 679, 64 S. W. 128; State ex rel. Folk v. Spencer, 164 Mo. 48, 63 S. W. 1118; State ex rel. Sale v. McElhinney, 199 Mo. 67, 97 S. W. 159; State ex rel. Tighe v. Brown, 224 Mo. 844, 23 S. W. 2d 1092.

We think the relator entered her appearance, for the reason that on September 21, 1944, the relator moved that the contestant be required to make a deposit to secure the cost in the circuit court and suggested that the sum so deposited be $500.00, and after some discussion between the court and counsel, an order was entered requiring contestant to deposit $200.00 costs, which was done. This was an entry of appearance. State ex rel. Young v. Oliver et al., supra. Moreover, on the same day, the attorneys for the contestee entered their appearance as her attorneys and accepted service on an order to show cause on behalf of the contestee. At no time did contestee's attorneys enter their appearance specially. It is true her attorneys did attack the jurisdiction, but since they did not enter their appearance specially and did ask the court to make an order for costs, their appearance was general and not special. State ex rel. Tighe v. Brown, supra. Therefore, the respondent judge had jurisdiction over the person of the relator.

Relator further contends respondent judge's order for the writ of recount and his supplemental order are in excess of his jurisdiction in that these orders are so broad and sweeping as to unnecessarily violate the secrecy of the ballot which is guaranteed by Article VIII, Section 3, of our State Constitution.

The order has directed the Election Board to make a recount; to remove the sticker required by the Laws of 1941, Page 363, from *all* the ballots in the ward; to ascertain the number thereof; to compare the same with the numbers on the ballot books opposite the names of the voters; to make return to the court showing how each such ballot was voted in event there is a contest over the ballots; and to permit contestant and her attorney to obtain and take notes of the facts and to make return thereof to the court.

These orders were based on the following "grounds" stated in the election contest notice: the first alleges that in twenty-six unspecified precincts more than fifteen votes were tabulated erroneously; the second alleges that in each of the twenty-nine precincts, ten or more ballots with check-marks opposite the name of the contestant were not counted for the contestant; the fifth alleges that in all the precincts votes were counted for contestee, although no one at all was voted for; and the sixth alleges that in all precincts some ballots had writing on them other than the designation of offices to be filled, but such ballots were improperly counted for the contestee. The seventh alleges that in all the precincts some ballots did not contain the signatures of the judges and the number required to be placed on each ballot; the eighth states that in each of the twenty-nine precincts the official return sheets failed to show the correct vote as cast; the fifteenth charges an improper alteration of the ballots, but so far as the allegation is concerned, there is no fact that implies such fraud could not be ascertained from an inspection of the particular ballots involved; the seventeenth alleges that in fifteen precincts two hundred votes cast for the contestant were wrongfully counted for the contestee; the eighteenth charges that in fifteen unidentified precincts five or more ballots cast for contestant were wrongfully altered and contestant's name was defaced or mutilated; and the nineteenth states that the contestee was a party to a conspiracy to defeat contestant by inducing Sarah Oldham to have her name placed on the ballot and that the contestee received ballots in her favor which should have been thrown out and contestant received sufficient ballots which should have been counted for her to entitle her to the office of Republican Committeewoman for the Eighteenth Ward.

The secrecy of the ballot should not be exposed, except in so far as it may be absolutely necessary, under the allegation of the pleadings in an election contest, to show fraud. Gantt v. Brown, 238 Mo. 560, 142 S. W. 422. The above enumerated errors in contestant's notice could be corrected by a simple recount, and the legality of such could be decided by the respondent judge, without the secrecy of the ballot being exposed.

The tenth ground of the notice alleges that in each of the precincts ten or more cast votes who had no right to be registered in the precinct or the ward in which they voted. Section 11632, supra,

provides that "if any objection be made to the qualifications of any voters, the names of such voters and the objections shall be stated therein [the notice]." Since the notice did not name the voters who were not qualified, the statute was not complied with, and, therefore, this ground is not valid.

The thirteenth ground states that votes were cast in the names of persons who were dead, or who had moved out of the ward, or who were not citizens of the United States, and failed to give the names of the persons who were dead, or had moved from the ward, or who were not citizens. Again, Section 11632, supra, was not followed, and, therefore, this is not a legal ground for an election contest.

■ With respect to the ninth charge, that fifteen of the ballots cast in each of the twenty-nine precincts were not numbered in the order received, and the corresponding numbers placed opposite their respective voters' names on the poll books, Section 11608 in the general election law requires corresponding numbers to be placed on the poll books and ballots in the order of receipt, and provides that no ballot not so numbered shall be counted. This provision has been in the statute since Laws Mo. 1862-3, Page 17, sec. 4. For a long time it has been held mandatory. West v. Ross, 53 Mo. 350; Ledbetter v. Hall, 62 Mo. 422. However, the election law applicable to St. Louis contains no such provision. Sections 12234 and 12235 both require by implication that the ballots be numbered "in regular succession," but Section 12240, dealing with ■ the count of the ballots, does not require unnumbered ballots to be thrown out except on condition. It provides:

"The judges and clerks of election shall first count the whole number of ballots in the box. *If* the ballots shall be found to *exceed* the the number of names entered on the poll books, they shall reject the ballots, if any found folded inside of a ballot; and *if* the ballots and poll books *still do not agree* after such rejection, they shall reject all ballots not numbered as required by this article, and no ballot not so numbered shall be counted. The ballots so rejected shall be enclosed in an envelope marked 'rejected ballots,' and returned with the ballot boxes to the office of the board, and the ballots, and poll books agreeing or being made to agree in this way, the judges shall proceed to count the votes and the clerks to tally the same." (Italics ours.)

A comparison of the number of ballots counted with names entered on the poll books will determine the validity of this charge without violations of the secrecy of the ballots.

■ As to the alleged grounds not already discussed, it is the relator's position that they are mere conclusions that do not state any facts that would notify the relator of the charges she must meet. She says, "The notice is a mere conglomeration of general charges commonly called 'a fishing expedition.'" The contestant does not name a single voter who was disqualified from voting, nor a single voter whose vote was improper.

The grounds not already discussed are as follows: Three and four allege that an unspecified number of ballots of unnamed, illiterate voters were marked for contestee or Sarah H. Oldham, although the voters instructed unnamed officials to make such ballots out for contestant; eleven and twelve charge in general terms that ballots were cast by persons who impersonated the voter and falsely cast their ballots for contestee; and fourteenth states that in three or more unspecified precincts a number of ballots were stolen and subsequently marked and counted for the contestee.

The relator contends that there is no specific allegation of fraud in the grounds of contest just related. They are mere conclusions and do not inform the contestee of facts sufficient to enable her to prepare her defense to these charges, and, therefore, show that they are not made in good faith.

On the other hand, the respondents contend that in an election contest where fraud is alleged even generally, the secrecy of the ballot is swept aside by the constitution. The proof of the allegations of fraud would necessarily have to be made by removing the stickers from the ballots and determining who voted the ballot and how he voted.

To determine this issue, we will examine some of our election contest cases. In the case of Hale v. Stimson, 198 Mo. 134, l. c. 147, 95 S. W. 885, we said:

"The statutes require the 'grounds' to be stated—*grounds* (in the law) can only mean substantive averments—informal, maybe, but yet in plain terms setting forth a cause of action upon which issue may be joined and which may, at least, tend to notify contestee of the charges he must face. Upon what theory can mere conclusions, such as constitute some of the framework of this notice, be considered issuable averments? As to the rest of the framework, oddly enough, it is built on ignorance—lack of knowledge. The description of unknown voters by name, color, size, or other earmarks—the precincts where they cast their votes, diligence to ascertain a description of name, number or precinct—all are unknown, unaverred and left in impenetrable fog—and this, *ex industria*."

The Hale case was an appeal from a judgment of the circuit court of Phelps County where that court entered judgment for the contestant. We reversed that case with directions to reinstate the contestee.

The case of State ex rel. Wells v. Hough, Judge, et al., 193 Mo. 615, l. c. 650, 91 S. W. 905, was a prohibition case. In speaking of the court's jurisdiction when the "grounds" were general, we said:

"We fully appreciate the contention of the learned counsel for the plaintiff in this proceeding that the notice of the contestant is strikingly indefinite and smacks strongly of a fishing expedition to ascertain facts which should be definitely stated but which the pleader did not

know, but were mere guesses and surmises. But as to whether the contestant will be able to avail himself of these facts under the allegations of his notice is, we think, a matter in the first instance, within the jurisdiction of the circuit court when the cause has progressed that far, and if error shall be committed by it, such error may be corrected by appeal to this court. As was said in State ex rel. v. Klein, 116 Mo. l. c. 268, 'We shall not assume in advance ▉ that the learned circuit judge will permit an insufficient notice of contest to receive his judicial sanction.' . . .

"We may then confidently assert that even in election contests, amendments which do not change the grounds of the contest may be allowed."

In the case of Gantt v. Brown, supra, the ballots of certain voters were challenged on the grounds that they were aliens, and, also, it was claimed the ballots of certain voters who testified they voted for Judge James B. Gantt, had been changed by scratching out his name. The immediate point presented was whether a subpoena duces tecum should be issued by the special commissioner to whom the case had been referred, so that the poll books might be brought in and the ballots of the voters in question identified, thereby disclosing how they voted, so far as shown on the face of such ballots.

The case held that where actual or legal fraud is charged in good faith, such disclosures may be made even though there has been no preliminary, prima facie showing of fraud by evidence independent of the poll books and ballots themselves. The principal opinion was by Graves, J. There were two concurring opinions, one by Lamm, J., and the other by Woodson, J. All these received a carrying vote. Valliant, C. J., dissented. The gist of the principal opinion is as follows: "We hold that where there is an allegation of fraud, *made in good faith, as appears to be from the pleadings* in the cases at bar, the ballots and poll books should be open for the purpose of showing fraud." (Italics ours.)

The concurring opinion of Lamm, J., summed up the holding of the court as follows: ". . . we put the investigation of fraud in an election case precisely on the foot of any other investigation of fraud so far as we can. Our ruling does not mean that the secrecy of the ballot should be exposed *except in so far as it may be absolutely necessary, under the allegation of the pleadings in an election contest, to show fraud, if any,* . . ." (Italics ours.) Judge Woodson's opinion held that the foregoing rules applied also to the registration books and all other papers and documents required to be made and preserved.

It is to be noted that the order for the writ of recount was made without any amendment being made in the grounds for the election contest, and no evidence was heard before this order was made.

From the above case, we think the rule is that before the secrecy of the ballot can be swept aside, the allegations of fraud should be

specific enough to show that they were made in good faith and, also, to inform the contestee of the charges of fraud he must defend. In other words, there must be sufficient facts alleged to show that fraud had been practiced, and not mere conclusions in the hope that when the secrecy of the ballots was invaded, fraud would be found.

The fraud alleged in the notice was general. To say that ballots were stolen in three or more precincts without naming the precincts, fails to show good faith. If this charge were true, the contestant should name the precincts. It would then be necessary to remove the stickers from the ballots only in the named precincts. The charges in reference to the illiterate voters is, also, too general to show good faith. No illiterate voter was named, nor was there an allegation that there were any illiterate voters or in which precincts they voted. Nor was a person named who did not vote, but for whom a ballot was cast by an imposter.

Respondents stated in their brief that, "It may be fairly presumed that the contestant was well acquainted with the voters in her ward, and had talked to a great number of them and possibly had talked to all the voters in certain precincts, and could draw a fair and accurate conclusion from what she had learned from talking to these voters, and from the result of the official count. It may be presumed that the filing of an election contest suit on her part was no idle gesture, but was decided upon because she had good reason to believe fraud had been practiced upon her and upon the public, and against the election laws of this State." If this be true, then the contestant could allege facts sufficient to show fraud and sufficient to show from her pleadings that the charges of fraud were made in good faith before the secrecy of the ballots should be swept aside.

From what we have said, it follows that the respondent Judge exceeded his jurisdiction in his order permitting the removal of the stickers from the ballots, thereby making public the vote of every voter casting his ballot for the office of Republican Committeewoman of the Eighteenth ▮ Ward of the City of St. Louis, and to this extent only, our rule is made absolute, and in all other respects, our rule is discharged.

It is so ordered. All concur.