Herschel DAVENPORT, Contestant-Appellant,

v.

John TEETERS, Contestee-Respondent.

No. 7345.

Springfield Court of Appeals.

Missouri.

Dec. 10, 1954.

Harold D. Jones, Jones & Batson, New Madrid, for contestant-appellant.

James V. Conran and Hal E. Hunter, Jr., New Madrid, for contestee-respondent.

RUARK, Judge.

This case, which has been transferred here by the Supreme Court, is an appeal by

the contestant from the order of the court below sustaining the contestee's motion to quash and dismiss notice of election contest, and dismissing the same, on the ground of lack of jurisdiction. A chronological statement of events shown by the record and agreed in the briefs is as follows:

A municipal election was held for the office of city marshal in the city of Parma, Missouri, on April 7, 1953. On April 11 there was an official canvass of the ballots and the respondent, who will be herein referred to as the contestee, was declared elected. On April 17, 1953, the appellant, who will be referred to as the contestant, filed notice of contest in the Circuit Court of New Madrid County, and such notice was served on the contestee by the sheriff on the 20th day of April, 1953. On April 29, 1953, the contestee filed his motion to quash and dismiss. The first term of the circuit court held or to be held thereafter in New Madrid County was the May term, which commenced on May 4, 1953.

The contestant's notice, after caption, stated, "Take Notice That I, Herschel Davenport, hereby present this Notice to the Circuit Court of New Madrid County, Missouri, for the purpose of contesting the election of John Teeters to the office of City Marshal of the City of Parma, Missouri, at the Election held on April 7, 1953." In substance the notice, which was in two counts, charged that at said election a total of 409 votes were counted; that on the basis of the official count the contestee received 204 votes and the contestant received 203 votes; thus by the pleading contestee received a plurality of one. For grounds of contest it was charged:

Paragraph 6, the votes of five (named) voters were illegally cast, in that they had not resided in the State of Missouri one year next preceding the election;

Paragraph 7, the vote cast by one named person was invalid because such person was only twenty years of age at the time of voting;

Paragraph 8, the vote of one named person was invalid because such person had not resided in the city sixty days preceding the election;

Paragraph 9, the votes cast by two named persons were illegal because they resided outside the city limits;

Paragraph 10, the votes of two named persons were invalid because they resided in Ward One and had cast their votes in said Ward One and thereafter (at least by inference) cast their votes in Ward Number Two;

Paragraph 11, the polls were closed at 6:00 p. m. instead of 7:00 p. m. and that because of this eight named persons who were all legally qualified were prevented from casting their ballots for the contestant;

Paragraph 12, in the second ward, six ballots were "voided," each of which was a ballot cast by a qualified voter and each of which was a vote for the contestant, and none of which (ballots) was improper or voidable.

The prayer as to Count I is for a recount of the votes, and for such other and further relief as the court may deem just and proper.

The second count adopts in substance the charges made in the first count, with the addition of a further charge, paragraph 16, that the contestee was at the time of the election in arrears for and had not paid his city taxes. The prayer of this count is that the election be declared null and void, that a new election be ordered, and for such other and further relief as the court may deem just and proper.

The motion to quash and dismiss was based on the grounds:

1. That the notice was filed by contestant on April 17, was served on April 20 and that the court had no jurisdiction for the reason that notice was not served within the time allowed by the statute.

2. That trial of the cause at the May term (commencing on May 4) was mandatory by the provisions of Section 124.280, RSMo 1949, V.A.M.S., and that the con-

testee did not have fifteen days' notice of the filing of the contest as required by Section 124.250.

3. That both counts failed to state a cause of action against contestee or to confer jurisdiction upon the court.

4. and 5. That the notice showed on its face that contestant had no cause of action and failed to ask for any relief that the court had jurisdiction or power to grant.

6. That both counts are insufficient in both form and substance to state a cause of action.

On May 4 the court heard and passed upon the motion, as follows:

"Arguments of counsel are presented and heard by the Court and the Court being duly advised in the premises does find that the Court has no jurisdiction and does sustain Contestee's motion to Quash and Dismiss Notice of Election Contest.

"Therefore, it is considered, ordered, adjudged and decreed by the Court as follows, to-wit:

"That the Court has no jurisdiction to hear Contestant's Notice to Contest Election and does sustain Contestee's Motion to Quash and Dismiss Notice of Election Contest and the said notice of Election Contest is dismissed."

The principal issue is whether or not the circuit court had jurisdiction of the cause and the person of the contestee; but in order to determine this issue we must answer three questions:

(a) Did the jurisdiction fail because trial at the May term was mandatory and because contestee did not have fifteen days' service of notice prior to the first day of that term?

(b) Was the notice insufficient to vest jurisdiction because it failed to specify an exact time and term?

(c) Was the notice insufficient to vest jurisdiction because the prayers of Counts I and II failed to ask for any relief which the court had power or jurisdiction to grant?

Another question is, were the grounds specified in the notice insufficient to state a cause of action?

Election contests are governed by the provisions of Chapter 124, RSMo 1949, V.A.M.S. The law of election contests is its own code. The contestant's notice of itself takes the place of and serves as a petition and the service of such notice takes the place of a summons and constitutes the process which brings the contestee into court. Statutes which make up this election contest code should be strictly construed in reference to jurisdiction, but, jurisdiction having been obtained, certain informality in respect to pleadings is allowed. State ex rel. Wells v. Hough, 193 Mo. 615, 91 S.W. 905; State ex rel. Penrose v. Killoren, 354 Mo. 22, 188 S.W.2d 1; Messick v. Grainger, 356 Mo. 1227, 205 S.W.2d 739; State ex rel. Brown v. Stewart, 313 Mo. 1, 281 S.W. 768; Armantrout v. Bohon, 349 Mo. 667, 162 S.W.2d 867; State ex rel. Woodson v. Robinson, 270 Mo. 212, 192 S.W. 1001; Phelps v. Fenix, 345 Mo. 440, 134 S.W.2d 84; Hale v. Stimson, 198 Mo. 134, 95 S.W. 885.

Section 124.250 provides:

"The several circuit courts shall have jurisdiction in cases of contested elections for county, municipal and township offices * * *; but no election of any such * * * county, municipal or township officers shall be contested unless notice of such contest is given to the opposite party within twenty days after the votes have been officially counted. The notice shall specify the grounds upon which the contestant intends to rely, and if any objection be made to the qualifications of any voters, the names of such voters and the objections shall be stated therein. The notice shall be served fifteen days before the term of court at which the election shall be contested, by delivering a copy thereof to the contestee * * *."

The words of Section 124.280 are:

"Every court authorized to determine contested elections shall hear and determine the same in a summary manner, without any formal pleading; and the contest shall be determined at the first term of such court that shall be held fifteen days after the official counting of the votes and service of notice of contest, unless the same shall be continued by consent, or for good cause shown."

Section 124.260 provides that the contestee may, if he so desires, contest any votes given to the contestant by giving him a notice in writing within twenty days after service of notice of contest upon him.

 It is contestee's position that under the terms of Section 124.280 it was mandatory that the cause be heard at the May term and that, in order to vest jurisdiction, the contestant was required to file and serve his notice within fifteen days before the beginning of such term. Actually the notice was filed more than fifteen days prior to the term but was not served by the sheriff until April 20, fourteen days before the first day of the term.

We think the construction placed upon the statute by the contestee tortures the meaning. All of the sections relating to time and manner of service must be read in pari materia and, if possible, effect must be given to each clause and provision. By the plain terms of the statutes the contestant had twenty days from and after the official count in which to make his investigation, determine the facts, prepare his pleading and have the contestee served with notice, and the cause thereupon became triable not sooner than the first term sitting fifteen days after the service of such notice. Even then the cause would not necessarily have been triable at such first term, because under the provisions of Section 124.-260 the contestee had twenty days in which to give his counter notice if he so desired. Would the respondent suggest that the language of Section 124.280 requires a determination of the contest prior to the elapse of time he was allowed in which to file his counter notice? We think not.

This question was laid to rest by the Supreme Court in State ex rel. Bulger v. Southern, 278 Mo. 610, 611, 214 S.W. 100. There the contention was raised that the court had no jurisdiction because the term at Kansas City was not the first term held in Jackson County fifteen days after the official count, and that the contest should have been filed and directed to the term at Independence. The opinion of Blair, J., speaking for the majority of the court, 214 S.W. loc. cit. 101, called attention to the fact that prior to 1879 the words "and service of notice of contest" did not appear in the original act but were inserted by amendment. At loc. cit. 101, 102 of 214 S.W., "Than those of the amendment words could not well be more apt to change the former rule. The triability of the contest at a particular term of court was made to depend upon two things, i. e., that the term began 15 days (1) after the official count, and (2) after the service of notice of contest." The opinion by Woodson, J., (dissenting on other grounds) is even more specific. At loc. cit. 106 of 214 S.W. the court said (referring to Sections 5928 and 5924, now Sections 124.280 and 124.250), "This construction placed upon section 5928, not only conflicts with section 5924 as to giving the 20 days' notice of contest, but violates the letter and spirit of section 5928 itself, the very statute they are construing.

"That section provides that the court shall hear and determine the proceeding in a summary manner and to determine the same at the first term of such court that shall be held 15 days after the official counting of votes, *and service of the notice of the contest.*" And again at loc. cit. 107 of 214 S.W., "By thus reading and construing the two statutes together, it seems clear that what the Legislature meant was that the court in trying the cause shall determine the same at the first term of the court which should be held 15 days after the expiration of the 20 days allowed for serving the notice of contest, which, of course, under the provisions of section 5924, would have to begin the next day after the official count had been completed".

We are not cited to, and we do not find, any authority to the contrary. We hold that the service of notice was within time to vest jurisdiction.

The next question is whether notice was insufficient in that it did not direct the notice to a specific time and term.

■ The term mentioned in Sections 124.250 and 124.280 is not necessarily a regular term, but the statutes contemplate special terms and adjourned terms as well. Adcock v. Lecompt, 66 Mo. 40; Montgomery v. Dormer, 181 Mo. 5, loc. cit. 14, 79 S.W. 913; State ex rel. Brady v. Evans, 184 Mo. 632, 83 S.W. 447.

■ It is held that a notice directed to the wrong term fails to vest jurisdiction. Ramsey v. Huck, 267 Mo. 333, loc. cit. 339, 184 S.W. 966; Adcock v. Lecompt, supra.

■ And the contestant is dependent upon an officer to serve the notice. Service by the contestant or person other than an officer of the court is invalid. Messick v. Grainger, supra; State ex rel. Woodson v. Robinson, supra.

■ Consider then the dilemma of the contestant. We need go no further than the facts in the instant case. Had the sheriff served the notice on the day it was filed, the case, subject to contestee's right to counter notice, would have been triable at the May term. But suppose the contestant assumed that the sheriff would require three days to obtain the service and specified the next term following. The service of such notice would, under the holdings, have been invalid. We find nothing in the statutes which make up the election contest code requiring that the notice be directed to a specific term and time. The law itself fixes the term dependent upon time of service and the pleadings. We therefore hold that the notice was not insufficient in failing to specify the term at which it would be triable.

■ The next question is whether or not the prayer of the notice (petition) was insufficient in that it asked for relief entirely beyond the jurisdiction of the court. The prayer of the first count was for a recount and for general relief. Despite some earlier decisions to the contrary, it is now well settled that a recount of the ballots may be had in a municipal election contest. State ex rel. Book v. Goodman, Mo., 263 S.W.2d 409; State ex rel. Williams v. Green, Mo., 264 S.W.2d 334; Bradley v. Page, Mo.App., 46 S.W.2d 208.

■ The second count prayed, among other things, that a new election be ordered by the court. This question is answered sufficiently by Section 124.300, which provides:

"In every case of contested election, if both parties consent thereto, the court authorized to try the same may award a new election, to be held at some specified day thereafter. At least five days' notice of every such special election shall be given in the township, county, circuit or district, in such manner as the court may direct."

It is true that, under this statute, both parties must consent to the order, and we cannot prophesy as to whether or not the contestee may hereafter give his consent. Nevertheless, it cannot be said that the prayer requested the court to do something which, given a certain condition, it was without jurisdiction to do.

■ For the foregoing reasons we hold that the prayers made in both counts were sufficient to vest jurisdiction in the court.

The fourth and final question is whether the notice states a cause of action. There is some question as to whether or not the attack made in the motion to quash and dismiss was intended as a part of the plea going to the jurisdiction. Certainly the court below treated it as such and made his finding and judgment solely upon the fact that jurisdiction had not been vested. This court would hesitate to overrule a judge upon a question which had not been ruled.

However, since it appears that this case must be reversed and remanded, we will examine the grounds with the view that our

remarks may be of some assistance to the court and counsel in further proceedings in the case.

 The contestant's notice must contain substantial averments, however informally they may be expressed, in respect to the grounds relied upon. Furthermore, from the allegations in respect to grounds it must appear that the case is brought in good faith, based upon some specific information, and is not simply a speculative dredging operation whereby the contestant scoops up everything within reach in the hope that there will be brought up a pearl of great value which will enable him to proceed with his contest. The grounds must be reasonably specific and, where reasonably possible, set forth the names and the precincts involved. And it must also appear that there is a reasonable chance that if the allegations be found correct the result of the election will be changed. State ex rel. Brown v. Stewart, supra; State ex rel. Penrose v. Killoren, supra; State ex rel. Wells v. Hough, supra; Armantrout v. Bohon, supra.

 But the first pleading is not necessarily final, and, provided there be a parent stock upon which the same can be ingrafted, amendments are permitted. Nash v. Craig, 134 Mo. 347, 35 S.W. 1001; Hale v. Stimson, supra; State ex rel. Wells v. Hough, supra; Ramsey v. Huck, supra.

 Paragraph 20 of the notice alleges that the matters charged were such as to be of great prejudice to the contestant and such as to amount to a wrongdoing and fraud upon him. It is often said (usually in reference to the opening and examining of ballots) that fraud must be charged. We think, however, it is not necessary to write the specific word and that a pleading of facts which of themselves would make the fraud is a sufficient allegation. Nor is it necessary that the fraud be actual. It may be such in legal effect. Gantt v. Brown, 238 Mo. 560, 142 S.W. 422. In that case the court said, 238 Mo. loc. cit. 567, 142 S.W. loc. cit. 424, "In this case the contestants charge fraud in the election, both

actual fraud and what might be denominated 'legal fraud.' The classification is immaterial in cases of the character under consideration, because fraud is fraud, whether it be actual or legal. In other words, a person in good faith, and without intention to work a fraud upon any person, might cast a vote, and yet the vote would be illegal. Such a vote in law works a fraud upon the person against whom it is cast, and would be denominated a legal fraud."

The grounds stated in paragraphs 6, 8 and 9 of the notice challenged the votes of certain persons which were alleged to be illegal because of lack of residence in one form or the other. The ground alleged in paragraph 7 challenged the legality of a vote because of the minority of the voter. The contestee challenges these grounds because the notice fails to allege that they cast their votes for contestee. But there is no way in which the contestant, absent some violation of the secrecy of the ballot, could know how such votes were cast. He has charged all that he can concerning such ballots.

The charges made in paragraph 10 allege that the votes of two persons were illegal because they resided in Ward One and had previously cast one vote each in said ward, "causing their vote in Ward Number Two to be in violation of the law of Missouri." Certainly if there were two votes cast by a voter and counted, at least one of them was invalid. However, the language does not actually charge that the votes were so cast, although same may be inferred. The contestant can, if he so chooses, make the allegation more certain by way of amendment.

 Paragraph 11 charges that the polls were closed at 6:00 p. m., thus preventing eight named qualified voters from casting their vote for contestant. The closing of the polls at 6:00 was in violation of the law, Section 111.370 RSMo 1949, V.A.M.S., and if by such action voters who intended to vote for the contestant were prevented from casting their vote, such constituted a legal fraud, no matter how innocent the election officials may have

been, for if such charges be true the denial of franchise to eight qualified voters could well have changed the election result where the final count showed a plurality of only one vote. While it has been held, State ex rel. City of Memphis v. Hackman, 273 Mo. 670, loc. cit. 697, 202 S.W. 7, loc. cit. 14, that the requirement that the polls be open at a certain time is ordinarily directory, the decision was predicated upon the fact that there was no evidence of resultant injury, "especially where there is no evidence that any one was deprived of the right of voting." Certainly the statutory requirement as regards keeping the polls open should not be lightly disregarded, especially where it is shown that qualified voters were denied the right to exercise their franchise. If the polls could, without judicial condemnation, be closed one hour ahead of the proper time, there would be no reason to say they could not be closed at 3:00 or even at an earlier hour.

Paragraph 12 charges that in the second ward six ballots were "voided," each of which was a ballot cast by a qualified voter, each of which was a vote for contestant and none of which ballots was improper. It is not clear what contestant intended by use of the word "voided." We can infer that he intended to charge that the election judges refused to count such ballots. If so, we think he can, by amendment, make the charge sufficiently certain.

■■■ Paragraph 16 charges that the contestee, Teeters, was not a qualified candidate because he was in arrears in respect to his city taxes. We think this is not a sufficient allegation. It is true that under the provisions of Section 79.250 RSMo 1949, and V.A.M.S., no person shall be elected or appointed to any municipal office who shall at the time be in arrears for any city taxes. However, an unsuccessful candidate has the burden of proving that a majority of the votes cast at an election were in his favor, and he must establish his right to the office upon his own title. The real contest is not who was qualified for the office but who was in fact elected. The general rule is that the eligibility of the candidate is not a competent issue in an election contest. Mansur v. Morris, 355 Mo. 424, 196 S.W.2d 287, loc. cit. 293; Phelps v. Fenix, supra. "The question of the successful candidate's eligibility to hold office is a proper subject of inquiry by quo warranto, and cannot as a rule be raised in a statutory contest of election * * *." 29 C.J.S., Elections, § 249, p. 361. We believe that this ground has no place in an election contest and, as to it, the notice states no cause of action.

For the foregoing reasons the judgment of dismissal is reversed and the case is remanded, with direction to proceed in accordance with the views herein expressed.

McDOWELL, P. J., and STONE, J., concur.