Robert C. ELLIOTT (Contestant), Respondent,

v.

John James HOGAN (Contestee), Appellant.

No. 30010.

St. Louis Court of Appeals.

Missouri.

Sept. 2, 1958.

Motion for Rehearing or for Transfer to Supreme Court Denied Sept. 29, 1958.

Edward L. Dowd, David G. Dempsey, St. Louis, for appellant.

Robert W. Henry, St. Louis, for respondent.

DOERNER, Commissioner.

This case involves an election contest by Robert C. Elliott, respondent, against John James Hogan, appellant, for the office of councilman of the City of Maplewood, Missouri. The trial court rendered a judgment that the contestant, Elliott, had been duly elected and ordered the contestee, Hogan, to give up such office. After an unavailing motion for judgment in accordance with his motion for a directed verdict, or in the alternative for a new trial, contestee appealed.

A municipal election was held on April 2, 1957 for the selection of a mayor and three councilmen. There were 6 candidates for the latter offices, including the contestant and the contestee. Following the official canvass of the votes, the city clerk, John P. Usher, certified to the city council that the results of the election of councilmen showed that the contestee had received the third highest number of votes, and the contestant the fourth most. Thereafter, on April 8, 1957, the Council of the City of Maplewood adopted a resolution declaring that Alfred W. Watters, Fred A. Collins, and contestee had received the highest number of votes and that they were duly elected as councilmen. On April 13, 1957, the contestant filed his notice of contest in the Circuit Court of St. Louis County, and on the same day a copy of such notice was served on the contestee by the sheriff of that county.

In brief, the grounds of contestant's notice were that 19 absentee ballots had been cast in the election by that number of voters, whose names, addresses and precincts were stated in an exhibit attached to the notice; that all of such absentee ballots cast were illegal, improper and void, in that they violated the mandatory provisions of the statutes in the following respects:

"A. None of the absentee voters, voting an absentee (ballot) because of illness or disability, made application in person, or by mail, to the City Clerk before 6 o'clock p. m. on the day before this said election.

"B. None of the absentee voters making application because of illness or physical disability attached to their application a certificate of illness or disability attested to by a licensed physician or a duly accredited practitioner of Christian Science before the date of the said election.

"C. None of the absentee voters received their ballots by registered mail from the City Clerk nor by delivery in person from the City Clerk.

"D. None of the absentee ballots contained the City Clerk's initials upon such ballot or ballots nor was any such ballot or ballots enclosed in an envelope bearing the name, official title and post office address of the City Clerk nor a proper printed affidavit thereon.

"E. None of the absentee voters deposited their ballots in the mail in an envelope bearing a post mark not later than the date of the election nor did any of the said voters deliver their said ballot in person to the City

Clerk sooner than 6 p. m. on the date of the election."

Contestant alleged that a count of the only legal votes cast would show that the contestant, and not the contestee, was duly elected by at least 6 votes; and closed with the prayer that the court declare the contestant to be the winner and to order the contestee to give up the office.

■ Appearing specially, contestee on May 3, 1957, filed his motion to dismiss the contest, upon the grounds that the notice of contest "fails to notify the contestee of the term of Court at which his election is to be contested," that it "fails to notify the contestee of the time at which he will be called upon to appear and defend himself in the Circuit Court," and that the court therefore "has no jurisdiction over the contestee." This motion was heard and overruled by the court below on May 15, 1957. At the beginning of the trial and before any other proceedings occurred, contestee orally renewed his motion to dismiss, preserved the point in his after-trial motions, and assigns as the first error on his appeal the overruling of his motion to dismiss because of the failure of the notice to specify when he was to appear. No other issue is raised as to the timeliness of the service on him of the notice, nor of the filing of the notice in the circuit court.

The applicable statute governing the contest in this case is § 124.250 RSMo 1949, V.A.M.S., which provides:

"The several circuit courts shall have jurisdiction in cases of contested elections for county, municipal and township offices and in cases of contested elections for seats as directors in boards having charge of the public school property and of public schools; but no election of any such school director or any county, municipal or township officers shall be contested unless notice of such contest is given to the opposite party within twenty days after the votes have been officially counted. The notice shall specify the grounds upon which the contestant intends to rely, and if any objection be made to the qualifications of any voters, the names of such voters and the objections shall be stated therein. The notice shall be served fifteen days before the term of court at which the election shall be contested, by delivering a copy thereof to the contestee, or by leaving such copy at his usual place of abode with some member of his family over the age of fifteen years; or, if neither such contestee nor his family can be found in the county, and service therefore cannot be had as aforesaid, it shall be sufficient service of such notice for the contestant to post a copy thereof in the office of the clerk of the court wherein the contest is to be heard."

Also pertinent is § 124.280 RSMo 1949, V.A.M.S., which reads:

"Every court authorized to determine contested elections shall hear and determine the same in a summary manner, without any formal pleading; and the contest shall be determined at the first term of such court that shall be held fifteen days after the official counting of the votes and service of notice of contest, unless the same shall be continued by consent, or for good cause shown."

Basing his contention on the rule that a notice in an election contest serves a double purpose, that of both the petition and a summons in an ordinary suit, State ex rel. Penrose v. Killoren, 354 Mo. 22, 188 S.W.2d 1; Messick v. Grainger, 356 Mo. 1227, 205 S.W.2d 739, contestee argues that the purpose of a summons is to notify a defendant when and where to appear to answer the complaint filed against him; that in ordinary civil actions the statutes not only fix the time within which a defendant is to appear and answer, but § 506.130 RSMo 1949, V.A.M.S. and Su-

preme Court Form No. 1 require that the summons state when he is to appear; and that the lack of such notification in the notice of contest was so fatally defective that the court never acquired jurisdiction of his person.

Precisely the same point was raised by the contestee in the case of Davenport v. Teeters, Mo.App., 273 S.W.2d 506. Pointing out that nowhere in the statutes which make up the election code is there a requirement that the notice of contest be directed to a specific term and time, the court there said, loc. cit. 511:

"The law itself fixes the term dependent upon time of service and the pleadings. We therefore hold that the notice was not insufficient in failing to specify the term at which it would be triable."

Further, the notice served in this case stated that the contest was being presented to the Circuit Court of the County of St. Louis, in which county the City of Maplewood is located, so that contestee was advised where he should appear. There is no question but that the next term of the Circuit Court of St. Louis County beginning more than 15 days after the service of the notice of contest was the May Term, commencing on May 6, 1957, the first Monday in May, and the case was in fact tried at that term of court. The issue is therefore ruled against contestee.

On April 3, 1957, the day after the election, about 6:30 p. m., the envelopes containing the 19 absentee ballots were opened, apparently by the city clerk, in the presence of representatives of the contestant and the contestee, and the results tabulated. There is nothing in the record to indicate that the four official judges of absentee ballots, required by § 112.060 RSMo 1949, V.A.M.S. had been appointed. Such results, together with the canvass of the ballots cast at the polling places, showed that the contestee had received more votes than the contestant. The next

day, April 4, 1957, the contestant caused to be delivered to the city clerk a letter challenging the legality of the absentee ballots on the grounds that they had been issued on the day of the election, and that those issued because the applicants were unable to go to the polls as the result of illness or physical disability had not been accompanied by a certificate of illness or physical disability attested by a licensed physician or duly accredited practitioner of Christian Science. The city clerk thereupon appointed himself, his secretary, Mrs. Lucille R. Skari, Albert A. Grellner as the representative of the contestee, and Patrick Norton as the representative of the contestant, in accordance with § 112.060, supra, as the judges to canvass the absentee ballots. Such judges proceeded to open the individual special envelopes in which the city clerk had previously sealed the absentee ballots together with the applications therefor and the envlopes having the statutory affidavit printed thereon, and to canvass and count such votes. At the conclusion of their canvass they certified that, among the candidates for the office of councilman, the contestant had received 4 votes and the contestee 14.

Thereupon the city clerk prepared an abstract of the votes, and certified that the contestant had received 1,868 votes and the contestee 1,872, both figures including the absentee ballots cast for the respective candidates. As heretofore. stated, the city council thereafter adopted a resolution declaring the contestee to have been duly elected, and this contest followed.

During the course of the trial, after the court below declined to permit the opening of the sealed envelopes containing the absentee ballots and other papers in open court, the contestee applied for a writ directed to the county clerk of St. Louis County, directing him to open, count and examine the absentee ballots. The trial court sustained the application and in its writ directed the county clerk to

open the same, in accordance with the law, and to certify the results of his canvass as well as certain information as to whether an application accompanied each ballot, the date the application had been received, the reasons given for the absentee-voting, whether, if on the ground of illness or physical disability, a medical certificate was attached, and what, if any, initials were on each ballot. As directed, identifying each individual ballot by number rather than by the name of the voter so as not to reveal his identity, the county clerk subsequently filed his certificate and return. The results of his examination as contained in the certificate and return of the county clerk may be summarized as follows:

| Ballot Numbered | For Hogan | For Elliott | Grounds for Application | Medical Certificate | Date Received | Ballot Initialed J.P.U. |
|---|---|---|---|---|---|---|
| 1 | X | | Illness | No | April 2 | Yes |
| 2 | X | | Physical disability | No | April 2 | Yes |
| 3 | X | | Physical disability | No | April 2 | Yes |
| 4 | | X | Age | No | April 2 | Yes |
| 5 | X | | Physical disability | No | April 2 | Yes |
| 6 | X | | Age | No | April 2 | Yes |
| 7 | Other candidates | | At school, out of town | | March 30 | Yes |
| 8 | X | | Physical disability | No | April 2 | Yes |
| 9 | | X | None stated | No | No date | Yes |
| 10 | | X | Incapable of leaving home | No | No date | Yes |
| 11 | X | | Physical disability | No | April 2 | Yes |
| 12 | X | | Physical disability | No | April 2 | Yes |
| 13 | X | | Working in Columbia, Mo. | | March 30 | Yes |
| 14 | X | | Physical disability | No | April 2 | Yes |
| 15 | X | | Physical disability | No | April 2 | |
| 16 | X | | Age | No | No date | No initial |
| 17 | X | | Physical disability | No | April 2 | Yes |
| 18 | | X | Medical convention in Kansas City, Mo. | | March 29 | Yes |
| 19 | X | | None stated | No | No date | Yes |

Neither party questions the accuracy of the certificate and return of the county clerk.

The trial court held that ballots identified as numbered 7, 13, and 18 had been applied for, issued, and cast in accordance

with the statutes, and that the remaining 16 were illegally cast and void for the reason that 3 were obtained on an application based on age, which was not a statutory ground; that no grounds were stated for 2; that all 16 had been issued on the day of the election; that none of the 16 who based their right to vote an absentee ballot on the ground of illness or physical disability attached a medical certificate attested by a licensed physician or a duly accredited practitioner of Christian Science; that one of the 16 failed to have subscribed thereon the initials of the city clerk, the issuing official; that none of the 16 was sent by the city clerk to the voter by registered mail nor delivered to the voter in person; and that none of the 16 was sent by the voter to the city clerk by registered mail nor delivered by the voter·in person to the city clerk. It found that the contestant had therefore received 1,865 votes, the contestee 1,859 votes, and declared the contestant to have been duly elected councilman.

There is no dispute between the parties as to the results of the ballots cast at the regular polling places. Of such votes the contestant received 1,864 votes and the contestee 1,859. It is therefore obvious that the final result of the election must be determined by the validity or invalidity of the absentee ballots. The determination of that question requires a further statement of the evidence.

Usher, the city clerk, who under our statutes was the official charged with the duty of preparing and issuing the absentee ballots, testified that only 3 applications for such ballots were made to him prior to the day of the election. All were made to him in person by the 3 applicants, one on March 29, 1957, by a doctor, because he was going to be in Kansas City, Missouri, attending a medical convention on the day of the election; another on March 30 by an applicant who was a student at the University of Missouri and was going to be in school; and the third, also applied for on March 30, by an applicant who gave as his reason that he intended to be working in Columbia, Missouri on the day of election.

As to the remaining 16 absentee ballots, Usher testified that all were issued on the day of the election. No applications were received through the mail. The record is silent as to the facts surrounding the issuance of 3 of the 16, and the evidence was devoted entirely to the circumstances regarding the issuance and voting of the remaining 13.

In brief, Usher testified that on April 2, 1957, the day of the election, he delivered 13 applications for and absentee ballots to Burke Workman and Fred Winterfield. This was disputed by Workman, who testified that he was not in the City Hall at any time during the election hours on that day. In any event, the applications for the absentee ballots together with the ballots themselves, were obtained by Winterfield and taken to the 13 voters. Winterfield was accompanied by Workman, who was a member of the Bar and a notary. Winterfield testified that he knew only 5 of the 13 persons and had not previously known the remaining 8, nor could he recall how he happened to call on them. Workman testified that he did not know any of the 13 voters. Winterfield testified that Mrs. Emma P. Day had requested him to obtain absentee ballots for 2 of the 5, and when called as a witness by the contestee Mrs. Day testified that she knew those 2 and 7 more personally, and that all 9 had requested her to obtain absentee ballots for them.

Testimony was offered by Winterfield, Workman, and Mrs. Day as to the age, illness or physical condition of all 13 upon whom Winterfield and Workman called. Two were in Deaconess Hospital, and the physical condition of the rest varied from one woman who had had pneumonia but was ironing when they called, to a man who was confined to his bed because of illness.

As to the procedure in filling out the application for the absentee ballot and the marking of the ballot, Winterfield testified that in most instances he filled out the ap-

plication, which was signed by the applicant (a few of whom needed assistance in signing their names), and the applications were then notarized by Workman; that the ballot was then given by them to the voter, and Workman either left the room or took a position from which he could not see the voter mark his ballot; that he (Winterfield) usually stayed in the room, but turned his head away; that in some instances the voters were assisted in marking their ballots by a wife, daughter or other relative; that the ballot was returned to him folded, and together with the application placed in the envelope on which was printed the statutory address, and that the envelope was sealed, and the affidavit and acknowledgment taken by Workman. Winterfield testified that there was no solicitation of the voters for any candidate, but that in one instance he asked a voter, "You know who I am for?" and she replied "Yes, I do."

Winterfield testified that no medical certificate was attached to an application for an absentee ballot by any of these 13 voters. Usher had testified that he had not told anyone that a medical certificate for an absentee ballot based on illness or physical disability was unnecessary, and could not recall any inquiry on that subject. He pointed out that on the application it was stated that a medical certificate was required. Contestee sought to. have Winterfield testify that Usher had told him, both before the primary election in March and the general election in April, that a medical certificate had never been required, and when an objection to such testimony was sustained, made an offer of proof to that effect.

In his brief contestee admits that the procedures followed in the case of the casting of 16 of the absentee ballots did not meet all of the "technical provisions," as he describes them, of the relevant statutes, but contends that such statutes are merely directory, and not mandatory, and that being merely directory, non-compliance with the statutes was not a proper basis upon which to reject such ballots. The terms "manda-tory" and "directory" are convenient only for the purpose of distinguishing one class of irregularities from another, for, strictly speaking, all laws are mandatory in the sense that they are enacted to be observed and obeyed. However, adopting, for convenience, the nomenclature heretofore commonly used, it is true that in many decisions involving our election laws a distinction has been drawn between the result which followed from the violation of a statute held to be mandatory and the consequence of a breach of a statute said to be merely directory in nature. State ex rel. Woodmansee v. Ridge, 343 Mo. 702, 123 S.W.2d 20; State ex rel. Hay v. Flynn, 235 Mo. App. 1003, 147 S.W.2d 210; State ex rel. Ellis v. Brown, 326 Mo. 627, 33 S.W.2d 104; State ex rel. Haller v. Arnold, 277 Mo. 474, 210 S.W. 374.

But whether a statute is mandatory or merely directory is not always clear. It has been said that if the statute in question prescribes the result to follow from its violation, the courts will consider the provision a mandatory requirement, and enforce it. Nance v. Kearbey, 251 Mo. 374, 158 S.W. 629; Gass v. Evans, 244 Mo. 329, 149 S.W. 628; Bowers v. Smith, 111 Mo. 45, 20 S.W. 101, 16 L.R.A. 754. In the latter case it was said, 20 S.W. loc. cit. 105:

> "If the law itself declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement."

And it has been held that where the irregularity has been such as not to have interfered with a full and fair expression of the voters' choice, particularly where it is a mistake of an election official, the irregularity should not result in the disenfranchisement of the voters. Bowers v. Smith, supra; Nance v. Kearbey, supra.

Thus no hard and fast test can be applied by which the question may be resolved. As we said in State ex rel. Hay v. Flynn, supra, 147 S.W.2d loc. cit. 211:

"There is no absolute test by which the question here presented may be resolved, but in passing upon the matter, the prime object is to ascertain the legislative intent from a consideration of the statute as a whole, bearing in mind its object and the consequences that would result from construing it one way or the other."

And see State ex rel. Ellis v. Brown, supra, and Hehl v. Guion, 155 Mo. 76, 55 S.W. 1024.

With this guide in mind, we turn to a consideration of §§ 112.010 et seq. RSMo 1949, V.A.M.S. concerning absentee voting. A review of those statutes reveals a comprehensive and restrictive code for the casting of absentee ballots. Other than military personnel, § 112.010 limits the right of absentee voting to only those who expect to be absent on election day from the county in which they are qualified to vote, and to those who through illness or disability expect to be prevented from personally going to the polls to vote. Section 112.020 provides that if a voter applies for an absentee ballot on the ground of illness or physical disability he shall attach to his application a certificate of illness or disability attested to by a licensed physician or duly accredited practitioner of Christian Science; that such application, on either of the statutory grounds, must be made in person or by mail to the election official within 30 days before the election and up to 6 o'clock p. m. on the day before the election. Such application, by § 112.030, must be made on blanks to be furnished by the election official, and the latter is required to compile, keep current, and post in a conspicuous place accessible to the public, a list giving the names, addresses, and voting places of those voters to whom he issues absentee ballots, which he is required to deliver to the applicant either in person or by mail.

Section 112.040 provides that the election official shall initial the ballot before delivering it to the voter, and shall enclose it in an unsealed envelope bearing his name, official title, and post office address, as well as having printed thereon a form of affidavit set forth in the statute. Sections 112.050 to 112.100, inclusive, contain meticulous provisions as to the oath to be administered to the absentee voter by an officer authorized to administer oaths; the marking of the ballot in his presence; the sealing of the same in the official envelope; the return of the envelope to the election official by a designated time; the preparation by him of a list of absentee voters whose ballots are returned to him; the appointment of judges to open and canvass the absentee ballots; the challenging of votes; and the secrecy, sealing and safekeeping of such ballots.

From a review of the evidence it is plain that these statutory provisions were violated in many respects. None of the 16 absentee voters in question made an application for an absentee ballot in person or by mail. The applications were not filed and considered before the ballots were issued; in fact, the city clerk issued the absentee ballots with the application blanks, and the applications were subsequently returned sealed with the ballots in the official envelopes. The applications and ballots were issued on the day of the election, whereas § 112.020 requires the applications to be filed with the election official not later than 6:00 p. m. of the preceding day, and implies that the ballots shall not be issued later than that time. Also, the reason given for absentee voting on 3 of the ballots was that of age, which is not a statutory ground; and no reason at all was given on 2 of the applications. And none of the 16, whether they gave age, illness or physical disability, supported their application with a medical certificate of any kind. Other irregularities in connection with the issuance, voting, and returning of these 16 absentee ballots could be enumerated, but the foregoing are the more serious and will suffice.

Applying the principles referred to in determining the legislative intent, we

are of the opinion that the absentee voting statutes with respect to such requirements are mandatory. By § 112.120 the General Assembly declared that such statutes were to provide a method of voting by voters absent from their county, or prevented by illness or physical disability from going to the polls to vote, on election day; that it is in addition to the method of voting at the polling places; and that it "to such extent is amendatory of and supplemental to existing statutes." As said in Straughan v. Meyers, 268 Mo. 580, 187 S.W. 1159, the absentee voting laws were enacted "to provide the means and machinery through which a certain class of citizens might enjoy a privilege which, under the general laws, could not be exercised." 187 S.W. loc. cit. 1163.

But while the Legislature has extended this special privilege to those who would otherwise be unable to vote on election day, it is readily apparent that it has provided safeguards to prevent an abuse of the privilege. The right to vote an absentee ballot is strictly limited to two statutory grounds: absences from the county on election day, and illness or physical disability. The time for applying for absentee ballots is limited. If sought on the ground of illness or disability the voter is required to support his application by a medical certificate of a licensed physician or duly accredited practitioner of Christian Science. It is made the duty of the election official in charge of such ballots to examine the application and the records, and to determine whether the applicant is lawfully entitled to vote. By the posting of lists, public notice must be given not only of those to whom absentee ballots are issued, but of those absentee voters who return their ballots.

Contestee points out that the only express statement as to the result to follow from a non-compliance with the act occurs in § 112.050, in which it is provided that in order to be eligible to be counted the absentee ballot must either be delivered to the election official by 6 o'clock p. m. of the day of the election, or be postmarked

the day of the election and reach the election official the day next succeeding the election; and contends that the Legislature having thus made compliance therewith mandatory indicated that all other provisions are directory only. We think otherwise. Taking into account the purposes of the act, the nature of the safeguards provided, and the consequences which would result from non-compliance therewith, in our opinion the statutes are mandatory. It is equally as important and as obligatory that absentee ballots be issued only to those clearly entitled under the statute to receive them, and that such ballots should not be issued after the time designated in the statute, as it is that they be received by the election official before the stated time. And the result of non-compliance should be the same for all such violations.

▮ Contestee's last point is that the 16 absentee ballots in question should be counted because no fraud in the voting of such ballots was alleged or proved. It is apparent from his brief that by the word "fraud" contestee has in mind an intentionally dishonest violation of the absentee voting laws committed for the purpose of obtaining an advantage by one candidate, to the detriment of the other,—what by some courts has been called "actual fraud" as distinguished from a "legal fraud." It is true that the words "fraud" or "fraudulent" do not appear in contestant's notice of contest. It was not necessary for him to use them. For as was said in Davenport v. Teeters, supra, 273 S.W.2d loc. cit. 512:

> "It is often said (usually in reference to the opening and examining of ballots) that fraud must be charged. We think, however, it is not necessary to write the specific word and that a pleading of facts which of themselves would make the fraud is a sufficient allegation."

Contestant did allege five specific violations of the absentee voting laws, and that the absentee ballots in question were illegally and improperly cast, and void, thus

in effect pleading legal fraud. The evidence fully supported the charges made. Furthermore, whether the fraud alleged in an election contest be actual or legal is immaterial and the consequence is the same. Thus, in Gantt v. Brown, 238 Mo. 560, 142 S.W. 422, loc. cit. 424, it was ruled:

"In this case the contestants charge fraud in the election, both actual fraud and what might be denominated 'legal fraud.' The classification is immaterial in cases of the character under consideration, because fraud is fraud, whether it be actual or legal. In other words, a person in good faith, and without intention to work a fraud upon any person, might cast a vote, and yet the vote would be illegal. Such a vote in law works a fraud upon the person against whom it is cast, and would be denominated a legal fraud. Another person, knowing himself to be disqualified, might vote, and such a vote would be tainted with both actual and legal fraud. A vote as cast might be changed by actual fraud. But, where fraud is charged in good faith in the petition, it can make no difference in a case, such as is here, whether the fraud be actual, or whether it be what might be denominated 'legal fraud.'"

The point is therefore ruled against the contestee.

For the foregoing reasons, the Commissioner recommends that the judgment of the Circuit Court of St. Louis County be affirmed.

PER CURIAM.

The foregoing opinion of DOERNER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.