Dewey BARKS, Respondent-Contestant,

v.

Natholene TURNBEAU, County Clerk of Madison County, Missouri, Appellant-Contestee,

and

Marquand-Zion R–VI School District, Appellant-Intervenor.

Nos. 40661, 40662.

Missouri Court of Appeals, St. Louis District, Division Three.

Sept. 12, 1978.

Motion for Rehearing and/or Transfer Denied Nov. 15, 1978.

Stephen N. Limbaugh, Jr., Limbaugh, Limbaugh & Russell, Cape Girardeau, for respondent-contestant.

Robert J. Blackwell, Farmington, for appellant-contestee and appellant-intervenor.

GUNN, Presiding Judge.

On April 4, 1978, the annual school election of the Marquand-Zion R–VI School District was conducted in conjunction with a county-wide election for Madison County, Missouri. A proposition to increase the school tax levy by $1.00 for every $100.00 of assessed property value was presented to the voters and passed by a margin of 350 to 166—a mere 6 votes more than the two-thirds majority required for approval. Included among the ballots counted were 70 absentee votes, 66 of which favored the proposition. Respondent-contestant Dewey Barks contested the election pursuant to § 115.553.2, RSMo Supp.1977[1] by citing numerous statutory violations in the absentee voting procedure. The Circuit Court found irregularities of sufficient magnitude to cast doubt upon the validity of the initial election and ordered a new polling on August 8, 1978. From that order, appellants Natholene Turnbeau, Clerk of Madison County, Missouri, and the Marquand-Zion R–VI School District appeal. They cite as error several trial court determinations: that Barks was entitled to contest the election; that the school district was not a

1. Statutory references are to RSMo Supp.1977.

necessary and indispensible party; that the contest was not barred by the statute of limitations. Appellants also complain that the trial court failed to properly apply the applicable case law to its interpretation of Chapter 115, RSMo Supp.1977, the Comprehensive Election Act of 1977. Our review of this court-tried case is limited by the precept that the judgment of the trial court will be sustained unless ". . . there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We affirm.

Section 115.553.2 provides that "(t)he result of any election on any question may be contested by one or more *registered voters* from the area in which the election was held." (emphasis added) Appellants argue that § 115.553.2 is modified by § 115.165.5, which states:

> Any registered voter who changes his place of residence within a jurisdiction at or before 5:00 p. m. on the fourth Wednesday prior to an election and does not transfer his registration at or before 5:00 p. m. on the fourth Wednesday prior to the election shall not be entitled to vote in the election.

They contend that Dewey Barks changed his place of residence without transferring his registration and therefore lost his status as a registered voter for the purposes of an election contest. The facts adduced at trial are as follows:

The Marquand-Zion R–VI School District encompasses wards 1 and 2 of the City of Marquand and a third ward, Marquand-Marquand, which consists of the outlying area both north and south of the city limits. Barks testified that he has owned a home in ward 2 for at least 25 years and that he had paid his 1977 real estate tax on the property. The home is fully furnished, has a water well and septic tank, but neither utilities nor telephone are presently connected. Approximately 25 feet from the house is a feed store, also the property of Barks. Electricity is available for use in his home via an extension cord attached to the feed store. Barks claims that the home in the City of Marquand is his permanent residence and the voter registration records held by Natholene Turnbeau reflect the same.

It was established at trial that Barks also owns a farm and mobile home located in the outlying ward, Marquand-Marquand. He and his wife have lived in the mobile home for the greater part of the last two years preceding the election. In fact, Barks estimated that he stayed overnight in the house in the city no more than 2 or 3 times a month. However, Barks stated that during the spring and summer, he and his wife spend an hour or two at the house every few days in order to cultivate their vegetable garden. Although mail is delivered to the farm, Barks asserted that he had no intention of making the mobile home his permanent residence, but he could not say with any degree of certainty when he would spend more time in town.

The first issue confronting us is whether Barks is a legitimate registered voter within the election area and eligible to contest the election. The trial court found that Barks was still a resident of ward 2 for voter registration purposes, and we cannot conclude that such finding was erroneous. In order to reject an old residence and acquire a new one, more than mere bodily presence in the new place is required. Equally essential is "a presently exercised intention to abandon the old and establish the new." *State ex rel. King v. Walsh*, 484 S.W.2d 641, 645 n.4 (Mo. banc 1972). *Accord*: *Gaffney v. Gaffney*, 528 S.W.2d 738 (Mo.1975); *In re Toler's Estate*, 325 S.W.2d 755 (Mo.1959); *Bridges v. Bridges*, 559 S.W.2d 753 (Mo.App.1977); *In re Estate of Ritter v. Hoffman*, 518 S.W.2d 453 (Mo.App.1975). A determination of true intention is largely a question of fact. It must be gleaned from both the utterances of the person whose residence is at issue and from his acts in light of all the circumstances of the case. *Fowler v. Clayton School District*, 528 S.W.2d 955 (Mo.App. 1975). ". . . (W)here the facts are

conflicting, the presumption is strongly in favor of an original or former domicile as against an acquired one." *State ex rel. Walsh v. King*, supra at 645. Even absence from an individual's residence for relatively long periods of time does not mean an abandonment of that residence where the intent to return exists. *State ex rel. King v. Walsh*, supra; *In re Estate Ritter v. Hoffman*, supra; *Chomeau v. Roth*, 230 Mo.App. 709, 72 S.W.2d 997 (1934). Considering the facts of this case, we cannot say that the trial court's judgment finding in favor of Barks' residence for purposes of contesting the election was against the weight of the evidence. As we have affirmed the trial court's determination of Barks' residency, we need not consider any allegation that § 115.553.2 violates the equal protection clauses of the Missouri and United States Constitutions.

The Marquand-Zion R–VI School District, appellant-intervenor in this case, complains that the lower court erred by not declaring it an indispensible party for the purpose of this election contest. Relying on Supreme Court Rule 52.04, the school district contends that its interest in the outcome of the action is so great that without compulsory joinder, complete relief could not be accorded. The full ramifications of this argument are not apparent until we consider appellants' third citation of error, however. If the school district was indeed an indispensible party, then Barks could be barred from suit for failure to serve the district with a timely petition to contest an election. §§ 115.577 and 115.579.

▮ The right to contest an election exists only as granted by constitutional or statutory provisions. *State ex rel. Conaway v. Consolidated School District No. 4 of Iron County*, 417 S.W.2d 657 (Mo.1967). ". . . (S)tatutory procedure in an election contest is a code unto itself, and is governed by the rules of civil procedure only to the extent expressly provided or required by implication." *State ex rel. Camillo v. Hess*, 458 S.W.2d 721, 722 (Mo. App.1970). *Accord: Gannon v. Cloyd*, 514 S.W.2d 649 (Mo.App.1974); *State ex rel.*

*Bonzon v. Weinstein*, 514 S.W.2d 357 (Mo. App.1974).

▮ The success of appellants' claim rests, therefore, upon the proper interpretation of the school board's status as implied in § 115.553.2:

The result of any election on any question may be contested by one or more registered voters from the area in which the election was held. The petitioning voter or voters shall be considered the contestant and the officer or election authority responsible for issuing the statement setting forth the result of the election shall be considered the contestee. In any such contest, the proponents and opponents of the ballot question shall have the right to engage counsel to represent and act for them in all matters involved in and pertaining to the contest.

Clearly, the statute designates the appropriate election authority, in this case Natholene Turnbeau, as the only indispensible contestee. This selection is consistent with the typical format of an election contest—a challenge to election procedure. Persons interested in the substance of a given ballot proposition may participate in the contest as intervenors or amicus curiae. Appellant school district's motion to be considered a necessary and indispensible party was properly denied. As a result, it was unnecessary for Barks to serve the district with a petition to contest the election as provided for in § 115.577.

Having determined that Barks was entitled to contest the election, we now review the substance of his complaint. Barks charges and the trial court found the following irregularities in the absentee ballot procedures:

(1) Each absentee voter failed to apply in writing for a ballot, in violation of § 115.-279. Only four of the voters made an oral application to the election authority. Consequently, sixty-six of the absentee voters made no application whatsoever, in derogation of §§ 115.279 and 115.289.

(2) As applications for absentee ballots are received, the election authority is to

compile a list of the names and addresses of the applicants pursuant to § 115.289. Mrs. Turnbeau recorded only four of the seventy absentee voters.

(3) In violation of a related provision, § 115.295.1, receipt of only four of the seventy absentee ballots was marked on the list required by § 115.289.

(4) The printed affidavits for the use of absentees did not conform with the requirements of § 115.283. A voter was not obligated, as stated by the statute, to declare under penalty of perjury the reason why he or she would be prevented from going to the polls on election day.

(5) Most of the absentee voters failed to personally fill out the affidavit on the ballot envelope, and 48 of the 70 failed to specify a reason for voting absentee in violation of §§ 115.283.2 and 115.291.

(6) The ballots of two voters, Daisy and Harold Staley, were included in one absentee ballot envelope. Only one affidavit was filed for both voters and was signed by both. Natholene Turnbeau purportedly witnessed the signing, but stated later that she did not actually see Harold Staley ascribe his name. These actions violate § 115.291.

(7) Sixty-six of the seventy absentee voters did not return their ballots by a method authorized in § 115.291.2. The election authority failed to reject the absentee ballots which contained faulty affidavits in violation of § 115.295. Further, all seventy of the ballots should have been received by the election authority and kept together pursuant to § 115.295. Instead, school board officials received many of the ballots.

(8) Four individuals who were neither employed nor deputized were allowed by the election authority to possess and handle the absentee ballots in violation of §§ 115.-051 and 115.637.10.

(9) The election authority failed to convene a verification board to corroborate the final tally and to certify the results of the election in violation of §§ 115.497 and 115.-499.

Appellants do not deny any of these allegations but argue instead that the violations were almost solely attributable to oversights of the election authority and had no effect on the actual tally. Relying on the language in *Kasten v. Guth*, 395 S.W.2d 433 (Mo.1965), appellants assert that absent voters fraud, an election should not be annulled even if certain provisions of the election law have not been strictly enforced. Quoting *Bowers v. Smith*, 111 Mo. 45, 20 S.W. 101 (1892), the *Kasten* court stated, l.c. 435:

> If the law itself declares a specified irregularity to be fatal, the courts will follow that command irrespective of their views of the importance of the requirement. *Ledbetter v. Hall* (1876), 62 Mo. 422. In the absence of such declaration, the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a free and full expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise it is considered immaterial.

 We agree that the decision to overturn an election and thereby disenfranchise the voters should not be taken lightly. However, the opportunity to vote by absentee ballot is clearly a privilege and not a right. Compliance with the statutory requirements is mandatory. *Straughan v. Meyers*, 268 Mo. 580, 187 S.W. 1159 (1916); *Elliott v. Hogan*, 315 S.W.2d 840 (Mo.App. 1958). The special privilege is limited to five statutory grounds: absence on election day from the jurisdiction where registered; illness or physical disability; religious belief or practice; employment as or by an election authority at a location other than the registered polling place; or incarceration. § 115.279. The legislature has provided safeguards to prevent abuse of the privilege, including a lengthy procedure of application and registration. Most importantly, the General Assembly has mandated that the effect of a faulty affidavit shall be the rejection of the ballot. § 115.295. It is the duty of the election authority to examine

the affidavit and determine whether the applicant is lawfully entitled to vote. Lacking indication of one of the five statutory grounds, the official must discount the ballot as illegally and improperly cast.

 Appellant argues that the violations were solely procedural and did not demonstrate actual voter fraud or conspiracy to defraud for the purpose of obtaining an advantage for one side over the other. However, the Supreme Court has made clear that Barks' allegations of specific violations of the absentee voting laws constituted a pleading of legal fraud. *Gantt v. Brown*, 238 Mo. 560, 142 S.W. 422 (1911). ". . . (W)hether the fraud alleged in an election contest be actual or legal is immaterial and the consequence is the same." *Elliott v. Hogan*, supra, at 849. This conclusion is not inconsistent with the decision in *Kasten v. Guth*, supra, cited by appellant. The Supreme Court's discussion of fraud in that case referred to imprudent actions and practices of conducting elections which were not made fatal by statute. We must conclude from a review of statutory safeguards in this case, however, that the absentee voting irregularities were "of sufficient magnitude to cast doubt on the validity of the initial election." § 115.549. The irregularities here were more than petty procedural infirmities but abuses of the election law which cannot be ignored. Well intended citizens—anxious for their school district—conducted an apparent door-to-door campaign for absentee votes fully equipped with absentee ballots and accompanied by notaries public. In many instances, the completed ballots—already defective for the reasons noted—were placed in the safekeeping of one or more of the school board candidates who also appeared on the ballot with the school tax levy proposition. In this case there are just too many instances of actions dissonant with the directives of the "Comprehensive Election Act" to be disregarded or considered immaterial to the fundamental purposes of the Act. Consequently, the trial court properly ordered the new election.

Judgment affirmed.

KELLY, J., concurs in result.

REINHARD, J., concurs.