**STATE of Missouri ex rel. Ed BUSHMEYER, Relator,**

v.

**The Honorable Clyde S. CAHILL, Jr., Judge of the Circuit Court of the City of St. Louis, Division No. 4, Respondent.**

No. 40949.

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 14, 1978.

J. Douglas McDaniel, Ted F. Frapolli, Dennis B. Mertz, Kroening, Mertz & McDaniel, St. Louis, for relator.

Louis Gilden, M. Ellen Simmons, St. Louis, for respondent.

Timothy G. Noble, St. Louis, for St. Louis Bd. of Election Commissioners.

SNYDER, Presiding Judge.

This is an original proceeding in prohibition arising from an election contest. Relator Bushmeyer seeks to prohibit respondent, The Honorable Clyde S. Cahill, Jr., Circuit Judge of the City of St. Louis, from enforcing his order requiring that all absentee voters in the August 8, 1978 Democratic primary election for the 83rd Legislative District be allowed to recast their ballots in a partial new election. This court's preliminary writ of prohibition was issued on September 29, 1978. Following briefs and argument, the preliminary writ was made absolute on October 6, 1978 by an order noting that an opinion would follow.

■ The question before this court as presented in the writ of prohibition is whether the circuit court exceeded its jurisdiction in ordering that all absentee voters for the Democratic candidates for the office of State Representative for the 83rd Legislative District in the August primary be allowed to vote a second time in a partial new primary. More specifically, may a partial new election for absentee voters only, in a primary election, be ordered by the circuit court when a candidate for whom some of the absentee voters cast their ballots is disqualified and his name removed from the ballot before election day.

Before the August 8, 1978 primary election, relator herein filed suit in the Circuit Court of the City of St. Louis against the Board of Election Commissioners of the City of St. Louis to remove from the primary ballot the name of John Leisure as a Democratic candidate for nomination for the office of State Representative for the 83rd Legislative District. The suit alleged that Leisure was not a resident of the 83rd Legislative District. The circuit court (Judge Michael F. Godfrey) issued an absolute writ of prohibition which resulted in the removal of Leisure's name from the ballot and the partial locking of the voting machines so that no votes for Leisure could be cast. The Board of Election Commissioners was also prohibited from counting the absentee ballots which had been cast for Leisure. Relator won the Democratic nomination for State Representative for the 83rd Legislative District in the August primary by 199 votes over his opponent, Owen Eaton.

Within the statutory time prescribed by § 115.531,[1] a petition was filed in the circuit court by several plaintiffs contesting the primary election. In Count I Glenn Young, Deborah Beck, Dorothy Clutts and Alma Flamm, individually and as class representatives for all absentee primary election voters who voted for Leisure, sought a new election. They brought the action pursuant to §§ 115.553(2), 115.577 and 115.549, and alleged that the failure of the Board of Election Commissioners to count their votes and its subsequent refusal to allow them to vote at the polls denied them their constitutional right to vote, relying upon Article I, Sec. 25 and Article VIII, Sec. 2 of the Constitution of the State of Missouri, as well as the Fourteenth Amendment to the Constitution of the United States. These plaintiffs sought injunctive relief in Count II which requested the court to order a new primary election.

In Count III Robert Stevenson, Nettie Hunt, J. B. "Jet" Banks, Sorkis J. Webbe, Jr. and Mae Francis, individually and as

members of the 83rd Legislative District Committee of the Democratic Party, sought a new election. They relied upon §§ 115.-553(2), 115.577, 115.549 and 115.529, and alleged that they were necessary parties who were not joined in the first lawsuit brought by relator Bushmeyer against the Board of Election Commissioners. In Count IV Stevenson, Hunt, Banks, Webbe and Francis sought injunctive relief for a new primary election, and in Count V the class action plaintiffs sought a declaratory judgment.

Owen Eaton, the defeated primary candidate, sought a new election in Count VI pursuant to §§ 115.527, 115.529 and 115.531. He alleged that the plaintiffs named as members of the 83rd Legislative District Committee of the Democratic Party were necessary parties to the first lawsuit brought by relator Bushmeyer, and that the absentee voters for Leisure were denied their constitutional right to vote, again relying upon Article I, Sec. 25 and Article VIII, Sec. 2 of the Constitution of the State of Missouri and the Fourteenth Amendment to the Constitution of the United States.

The cause was heard before respondent who on September 28, 1978 signed findings of fact and conclusions of law, an order and a memorandum opinion. However, he stayed entry of the order until September 29 to allow relator an opportunity to file this proceeding. Respondent allowed plaintiffs in Count I to proceed as a class. Respondent also found that plaintiffs in Count I were disenfranchised because their absentee ballots for Leisure were not tabulated and they were then not allowed to vote a second time at a polling place, holding that they were denied their constitutional right to vote under the Constitution of the State of Missouri and denied equal protection of the laws under the Constitution of the United States. The court found this disenfranchisement was an irregularity in the August primary which necessitated the calling of a new election, but only for the 337 voters who had cast absentee ballots.

2. The trial court did not rule on Counts II, IV and V. It dismissed Count III because plaintiffs Stevenson, Hunt, Banks, Webbe and Francis lacked standing to sue under the statutes.

As to plaintiff Eaton's Count VI, respondent adopted and incorporated by reference its findings on Count I and held that Owen Eaton was a party who satisfied the statutory requirement for a primary election contest pursuant to § 115.531.[2]

■ The right to contest an election exists solely as established by statute, and one seeking relief under statutory provisions must bring himself strictly within their terms. *State ex rel. Conaway v. Consolidated School Dist. No. 4 of Iron County*, 417 S.W.2d 657, 659[4] (Mo. banc 1967), cases cited therein and *Barks v. Turnbeau*, 573 S.W.2d 677 (St. Louis District, Mo.App., filed September 12, 1978). Likewise, the jurisdiction of the circuit court is confined strictly to statutory provisions governing election contests and " 'the letter of the law is the limit of (its) power'." *State ex rel. Bonzon v. Weinstein*, 514 S.W.2d 357, 362[6] (Mo.App.1974). Even courts of equity have no power, absent statutory authority, to determine election contests. *Nichols v. Reorganized School Dist. No. 1 of Laclede County*, 364 S.W.2d 9, 13[6] (Mo. banc 1963).

The election contestants in their petition relied upon various sections of the statute. Plaintiffs Young, Beck, Clutts and Flamm, absentee voters, cited the following statutory sections, which are set forth in pertinent part below:

*Sec. 115.549* If any court trying a contested primary election determines there were irregularities of sufficient magnitude to cast doubt on the validity of the initial election, it may order a new primary election for the contested office.

. . .

*Sec. 115.553(2)* The result of any election on any question may be contested by one or more registered voters from the area in which the election was held. . . .

*Sec. 115.577* Not later than thirty days after the official announcement of

Matters relating to these counts were not raised in the petition for writ of prohibition, are not before this court, and need not be discussed further.

the election result by the election authority, any person authorized by section 115.-553 who wishes to contest the election for any office or on any question provided in section 115.575 shall file a verified petition in the office of the clerk of the appropriate circuit court. . . .

Plaintiff Eaton relied upon:

*Sec. 115.527* Any candidate for nomination to an office at a primary election may challenge the correctness of the returns for the nomination charging that irregularities occurred in the election.

*Sec. 115.529* Circuit courts shall have jurisdiction to hear and determine all primary election contests.

*Sec. 115.531* Not later than five days after the official announcement of the results of a primary election is issued by the election authority or the secretary of state, as the case may be, any candidate desiring to contest the primary election shall file a verified petition in the office of the clerk of the circuit court of any circuit in which part of the election was held and in which any alleged irregularity occurred. . . .

Initially the statutory authority of plaintiffs Young, Beck, Clutts and Flamm to bring their cause of action must be established or found wanting.

■ As registered voters these plaintiffs were authorized by § 115.553(2) to contest "any question" in an election. The statute defines "question" as "any measure on the ballot which can be voted 'YES' or 'NO.'" § 115.013(22). However, these plaintiffs were seeking a new primary election on a matter relating to nomination to office rather than a ballot "question" as defined in the statute. The only statutory provision authorizing such relief, § 115.527, does not apply to them as registered voters, but is available only to candidates. Therefore, plaintiffs Young, Beck, Clutts and Flamm did not have standing to challenge the nomination of relator.[3]

Even though these plaintiffs alleged infringement of their constitutional right to vote, standing to complain and their allegations must fall within the statutory provisions relating to election contests because they have cited the election contest statutes as their authority to file suit. Respondent exceeded his jurisdiction in proceeding on their claim and granting them a new primary election.

Respondent found that plaintiff Eaton had standing to sue pursuant to § 115.531 which is the section prescribing the procedure for filing, and the contents, of the petition. Eaton, himself, correctly plead § 115.527 as his authority to file the election contest. However, the only fact alleged by Eaton challenging the correctness of the returns and charging irregularities was that "in failing to count the votes cast by absentee ballots the Board of Election Commissioners effectively denied registered voters their constitutionally guaranteed right to vote." Respondent perceived correctly that the essence of plaintiff's argument was not only that absentee ballots for Leisure were not counted,[4] but also that absentee voters for Leisure were barred from voting for a qualified candidate at the polls. Respondent's order was based upon the contention that the denial to these absentee voters of a second vote at the polls was a denial of their constitutional right to vote.

■ Respondent relied on Article I, Sec. 25 of the Constitution of the State of Missouri which states that "no power, civil or military, shall at any time interfere to prevent the free exercise of the right of

---

**3.** It is not necessary to determine whether these plaintiffs properly constituted a class. They lack standing either individually or as a class.

Nor can these plaintiffs pursue their election contest on the basis of § 115.549. They must have standing to initiate the action before they can allege irregularities of sufficient magnitude to cast doubt on the validity of the election.

**4.** The failure to count absentee votes for Leisure could not, itself, form the basis for respondent's order as it was not an irregularity as required by the statutes. The failure to count the absentee votes for Leisure occurred pursuant to the court's earlier order and, thus, could not be an irregularity.

suffrage" and Article VIII, Sec. 2 which provides that "all citizens of the United States . . . are entitled to vote at all elections by the people." He interpreted these articles to guarantee the right to vote to these absentee voters. However, the right to vote may be regulated by statute, *Nance v. Kearbey,* 251 Mo. 374, 158 S.W. 629, 631[1] (1913), and the regulation of primary elections is within the police power of the state. In *State ex rel. McClellan v. Kirkpatrick,* 504 S.W.2d 83, 88 (Mo. banc 1974) the court stated that the preservation of the integrity of the electoral process is a legitimate and valid state goal.

■ To vote by absentee ballot is not a matter of inherent right but rather a special privilege available only under certain conditions, as respondent has stated in his well-written memorandum opinion, *State ex rel. Hand v. Bilyeu,* 346 S.W.2d 221, 225[3] (Mo.App.1961); *Barks v. Turnbeau, supra,* 7. By the very nature of absentee voting, the voter is declaring that he will be unable to participate in the regular voting process at the officially designated polling place on the date of the election. Rather than forsake his opportunity to vote, however, he utilizes the absentee privilege. By casting his vote prior to election day, the absentee voter accepts the risk that his vote may not be counted as a result of events occurring between the date he votes absentee and the date of the election. In this case, the absentee voters accepted the possibility, which became a reality, that their candidate (Leisure) would be disqualified. When the disqualification occurred the absentee voters were not disenfranchised as respondent found. By exercising the privilege to vote absentee, the voters accepted the risks accompanying that manner of voting. These risks are best borne by the person utilizing the privilege. To maintain the order, speed and integrity of the election process, it is essential that the process itself should not be susceptible to risks which disrupt it.

■ Voters are not entitled to two votes, that is, one by absentee ballot and one at the polling place. Respondent argues that no notice was given the absentee voters that Leisure had been disqualified, but that polling place voters were notified by means of the partially locked machines. Even if the absentee voters had been given notice, they would have been prohibited by statute from casting a second vote. The legislature has recognized potential problems should an absentee voter attempt to vote again at the polls, by enacting § 115.297 which provides that a person who has voted an absentee ballot shall not be allowed to vote at the polls on election day. The effect of ordering all voters who voted absentee in the August primary to vote again is to allow these voters a second vote in a partial new primary. Respondent cites no authority, nor does research disclose any, to support this procedure.

Additionally, there are severe practical problems if respondent's order is not prohibited. The pleadings and arguments disclose that three of the absentee voters have died and four have moved from the district. The question arises whether those who have moved would be entitled to vote again at a time when they are no longer residents of the district.

Because of the secret ballot, it is impossible to identify which specific named absentee voters voted for Leisure. Therefore, if respondent's order should be approved, those individuals who voted by absentee ballot for relator or for plaintiff Eaton in the August primary would be given an unauthorized second vote, though they earlier cast a valid ballot which was counted. They would be permitted to change their votes, a privilege not allowed by the statutes for any reason.

In addition, there would be the possibility of a challenge to some of the ballots cast in the new partial election, or possibly another election contest. There must be an end to election litigation. The statutes were drafted to assure early resolution of election disputes and quick and certain certification of the results.

To avoid the situation which currently confronts the court in future elections, the Board of Election Commissioners would be

required to notify absentee voters who had voted for a disqualified candidate. To determine which absentee voters had so voted, the Board would be required to open ballots prior to the day authorized by law and to identify voters with the candidate for whom they had voted, contrary to the secret ballot. Thus, the Board would violate the law to achieve its end. Such a procedure cannot be condoned.

The problem encountered here may in the future be brought to the attention of the legislature and a statutory solution enacted into law. At present, however, the election laws do not permit a second vote under the circumstances being considered here.

Finally, the equal protection argument raised by plaintiffs and adopted by respondent must be considered. Respondent's order indicates that the failure to notify absentee voters that Leisure had been disqualified denied them equal protection of the laws, reasoning that voters who appeared at the polls received notice of Leisure's disqualification by virtue of the fact that the machines were partially locked to prevent a vote for Leisure. Respondent found that absentee voters cannot be treated differently from polling place voters, but that the former in fact were treated differently because they did not receive notice of the disqualification, and hence were disenfranchised. At first reading the argument regarding lack of notice seems plausible. Obviously, when one group receives notice (polling place voters) while another (absentee voters) does not, the groups are treated differently. However, lack of notice is consistently treated as a procedural due process deficiency and not as a denial of equal protection. And, because the absentee voters here, by utilizing the privilege of voting by absentee ballot, assumed the risk of disqualification of their candidate and were not in fact disenfranchised, they have not been treated differently from the polling place voters, except in a manner permissible under the election statutes relating to absentee balloting and primary election con-

tests.[6] Thus, the equal protection argument is not valid.

The preliminary writ is made absolute.

WEIER, C. J., and SMITH, J., concur.

---

6. No opinion is expressed as to whether, given other factual situations, absentee voters, con-

stitutionally, may or may not be treated differently than polling place voters.